**STATE of Missouri, Plaintiff–Respondent,**

v.

**Bruce HAMLETT, Defendant–Appellant.**

**No. 15380.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 9, 1988.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 31, 1988.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

GREENE, Judge.

Bruce Hamlett was charged by information with the crime of murder in the second degree, § 565.021.1.[1] The information, as amended, alleged that Hamlett, on June 20, 1986, in Vernon County, Missouri, with the purpose of causing serious physical injury to James Franklin Stacy, caused Stacy's death by repeatedly striking and kicking him in the head. After trial by jury, Hamlett was found guilty of the lesser included offense of voluntary manslaughter, § 565.023, and sentenced to 15 years' imprisonment as punishment for the crime.

Hamlett appealed, contending the trial court erred in (1) sustaining the state's challenges for cause of two members of the jury panel, and (2) refusing to give a requested instruction on involuntary manslaughter. We affirm.

In his first point relied on, Hamlett asserts the trial court's decision to remove Ted Waldbuesser and Karleen Havens from the jury panel constituted prejudicial error. Both jurors, evidently because of religious beliefs, indicated in their answers to questions by the prosecutor that they did not feel they could set in judgment of another human being. In answers to questions by defense counsel, the prospective jurors equivocated, making statements like, "If I had to do it I could. I don't feel right doing that" and "I don't quite feel right that an individual can truly judge another individual.... [I]f I'm selected I would try to do the best job I could, but I just wouldn't feel right doing the judging part." Based on their answers, the trial judge sustained the state's request to strike the names of the two jurors from the jury panel.

---

1. Unless otherwise indicted, all references to statutes are to RSMo 1986.

The trial court possesses great discretion in determining whether motions to strike for cause should be sustained, and its rulings will not be disturbed on appeal, absent a clear abuse of discretion. *State v. Leipus,* 675 S.W.2d 896, 898 (Mo.App.1984). If answers of prospective jurors to questions posed by counsel or the court raise a doubt as to their ability to be fair, such doubt is to be resolved by removing them from the jury panel. *State v. Walker,* 639 S.W.2d 854, 857 (Mo.App.1982). Here, two conscientious venirepersons had doubts about to their ability to set in judgment on Hamlett. As a result, the trial judge removed them from the jury panel. In doing so, he did not abuse his discretion. The point has no merit.

In his remaining point relied on, Hamlett contends that the trial court erred in refusing to submit his requested instructions on the lesser included offense of involuntary manslaughter, because the evidence adduced at trial "supported a finding that the defendant recklessly caused the death of James Franklin Stacy by kicking him."

Voluntary manslaughter and involuntary manslaughter are lesser included offenses of second degree murder, the crime with which Hamlett was charged. § 565.025.2(2)(a, b).

While automatic submission of manslaughter is no longer required in murder prosecutions, *State v. Merritt,* 734 S.W.2d 926, 932 (Mo.App.1987), a trial court is obligated to submit a lesser included offense instruction if the evidence arguably shows lack of an essential element of the higher offense which would not only authorize acquittal of the higher but sustain a conviction of the lesser, *State v. Olson,* 636 S.W.2d 318, 322 (Mo. banc 1982), and if such lesser included offense instruction is requested by one of the parties or the court. § 565.025.3, L.1983, S.B. No. 276, § 1.

The trial court gave instructions on second degree murder and voluntary manslaughter. The second degree murder instruction tracked the information, and stated that if the jury found that (1) Hamlett caused the death of Stacy by "kicking and striking" him, (2) Hamlett's purpose was to cause serious physical injury to Stacy, (3) Hamlett "did not do so under the influence of sudden passion arising from adequate cause", and (4) he did not act in self defense, then they should find him guilty of second degree murder. This instruction contained all of the elements of a second degree murder charge, as that crime is defined in § 565.021.1(1).

The voluntary manslaughter instruction contained all of the elements of the second degree murder instruction except that it omitted the element requiring that Hamlett did not act under the influence of sudden passion. It tracked the elements of the crime of voluntary manslaughter as set out in § 565.023.1(1).

The refused instructions defined the crime of involuntary manslaughter. Section 565.024.1(1) states that a person commits the crime of involuntary manslaughter if he "[r]ecklessly causes the death of another person." The term "recklessly" is not defined in the statute. However, MAI–CR2d 13.10, which is the approved verdict directing instruction for involuntary manslaughter, states:

> In determining whether the defendant recklessly caused the death of [*name of victim*], you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

The term "acts recklessly" is defined in § 562.016.4, which deals with culpable mental states, as "[a] person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The trial court refused to give the instructions, stating that it did not believe Hamlett's conduct was "reckless." We agree.

Viewed in a light most favorable to Hamlett's position on the issue, the evidence presented at trial was as follows. James Stacy was married to Linda Stacy. Linda is the mother of Christine Hamlett, Bruce Hamlett's wife. James and Joseph Young are sons of Linda and brothers of Christine. There had apparently been an ongoing dispute between Bruce Hamlett and James Stacy. During one of their prior confrontations, Stacy had displayed a pistol in a threatening manner.

On June 20, 1986, Bruce, Christine, their two children, and the Young brothers, who at the time were living with the Hamletts, left the Hamlett home in Rocky Comfort, Missouri, and drove to Nevada, Missouri, where they were to attend a family reunion at the home of Jerry Quackenbush, Linda's brother. While in Nevada, the Young brothers decided to test drive a Vega automobile owned by the Stacys to see if they wanted to buy it. Linda and James Stacy accompanied them on the trip. They drove to the Quackenbush home. When they were leaving the family gathering, Hamlett became involved in an argument with James Young over whether the Young brothers should continue to live in the Hamlett home. James Stacy, who was sitting in the rear seat of the Vega, started participating in the argument. Hamlett walked over to the Vega and told Stacy to, "Get out, you son of a bitch." Hamlett's version of what happened next was that after Stacy got out, he appeared to be reaching under the car seat. Due to past experience with Stacy, Hamlett thought he was reaching for a gun or a tire tool. Without waiting to find out, Hamlett, who was wearing western boots, kicked Stacy "in the throat or in the side of the head." Hamlett admitted the blow was intentional. He then "lost control and hit him (Stacy) three or four times on the side of the head" with his fist. He then kicked Stacy again, and hit him "approximately two more times" before Stacy fell to the ground.

The state's version differed only in that its witnesses said Hamlett kicked Stacy in the head several times and struck him in the head repeatedly with his fists.

After the assault, Stacy was taken to a hospital where he was pronounced dead on arrival. It was the pathologist's opinion that Stacy died from respiratory and/or cardiac arrest brought on by a massive brain hemorrhage caused by a blow or blows to the head. There were two hematomas two to three inches in circumference on opposite sides of Stacy's head which were consistent with his head being struck with a fist or foot, or a culmination of a blow to the head followed by his head hitting the ground during his fall.

While Hamlett's version of the assault justified the submission of the issue of self defense, which defense was rejected by the jury, such version did not support an inference that Hamlett's conduct was reckless, rather than intentional. The word "recklessly" used in the involuntary manslaughter statute, § 565.024.1(1), has the same connotation as the term "culpable negligence" which appeared in the old manslaughter statute which read "[e]very killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." § 565.005, RSMo 1978, repealed by L.1983, p. 922, S.B. No. 276, § 1.

To make negligence "culpable" under that statute required proof that Hamlett's conduct was of such reckless character as to indicate an utter disregard for human life, and that he had knowledge, actual or imputed, that such conduct would endanger human life. *State v. Adams*, 359 Mo. 845, 224 S.W.2d 54 (1949). Culpable negligence has also been defined as an omission to do that which a reasonably prudent and honest man would do, or doing something that such a person would have done under similar circumstances. *State v. Pauly*, 267 S.W. 799, 801 (Mo.1924). These definitions are compatible with the definition of the term "recklessly" contained in MAI–CR2d 13.10, which is the pattern verdict directing instruction for involuntary manslaughter.

Viewed by these standards, it is obvious, even from Hamlett's version of the events, that his conduct was not reckless, but was intentional. His attack on Stacy was delib-

erate, not accidental, and even if Hamlett, as he says, had no desire to kill Stacy, such a result followed. Since the assault, by fists and feet, was a means likely to produce death, Hamlett is presumed to have intended that death would follow his acts. *State v. Newbold*, 731 S.W.2d 373, 381–82 (Mo.App.1987). Hamlett was not entitled to an involuntary manslaughter instruction. The point has no merit.

The judgment and sentence of the trial court are affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.