STATE of Missouri, Respondent,

v.

Scott Robert BEELER, Appellant.

No. SC 81975.

Supreme Court of Missouri,
En Banc.

Feb. 22, 2000.

Rehearing Denied March 21, 2000.

Donald L. Wolff, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

JOHN C. HOLSTEIN, Judge.

Defendant Scott Robert Beeler appeals his conviction by a Schuyler County jury of involuntary manslaughter, sec. 565.024.1(1),[1] for which he was sentenced to seven years imprisonment. This Court ordered the case transferred from the court of appeals after opinion. *Mo. Const. art. V, sec. 10.* The judgment of the trial court is reversed.

## I.

Defendant was the city marshal of Lancaster, Missouri. In the early morning of December 31, 1996, he stopped Ashley McElroy for driving with a headlight out and radioed the Schuyler County sheriff's department for information. The radio dispatcher learned that McElroy's driver's license had expired and relayed that information to defendant. Almost immediately, defendant radioed the dispatcher, reporting that he "had a man down." He also requested that the Schuyler County sheriff, chief deputy, and defendant's father be summoned.

The sheriff proceeded to the church parking lot where the cars of defendant and McElroy were stopped and found defendant motioning him to pull into the lot. Defendant appeared excited and told the sheriff, "Don, I'm tired of this shit. He pulled a hammer on me and I shot him." The sheriff asked defendant where McEl-

---

1. Unless otherwise noted, all statutory references are to RSMo 1994. "Involuntary manslaughter" as used herein refers to reckless manslaughter and not to vehicular manslaughter. *See sec. 565.024.1(2).*

roy was, and defendant responded that he was in his own car. As the sheriff approached McElroy's car, defendant followed him saying, "I hope the son of a bitch is dead."

When he reached McElroy's vehicle, the sheriff opened the passenger door and saw McElroy lying across the front seat with his head toward the passenger side of the car. The sheriff checked the body for signs of life but found none. On the floorboard, underneath McElroy's foot, he found a hammer.

A criminal investigator with the Missouri Highway Patrol noticed McElroy's driver's side window was rolled down about nine and one half inches. Upon further inspection, he discovered the interior handle to the driver's side door was missing. The door, which could not be opened from the inside, could only be opened by rolling down the window and reaching outside to grab the exterior handle. Another officer found four shell casings around McElroy's car, and a fifth was located later.

An autopsy revealed McElroy had sustained multiple gunshot wounds. The examining physician testified McElroy had been shot in the upper left chest, again lower on his left side, in the right hip, in his lower back, and finally in his left hand. Two of the shots were fatal.

A county medical worker called to the scene asked defendant who the victim was. Defendant replied, "I'm tired of this [expletives]." Again, the man asked him to identify the victim, and defendant informed him it was McElroy. A state trooper approached defendant and asked, "[H]ow are you doing?" He responded, "I'm doing fine, but that [expletive] isn't." Then, defendant added, "[Y]ou know a hammer can kill you. You know that I was right doing what I did." Defendant continued to repeat that several times.

In his written statement, defendant said he stopped McElroy's vehicle for having a headlight burned out. He approached the vehicle, identified himself, and asked McElroy to roll down his window. McElroy said he could not roll it down as the knob was broken. Defendant asked McElroy for his driver's license, but McElroy said he did not have it with him. Defendant returned to his patrol car and requested a license check on McElroy from the dispatcher. The dispatcher told defendant that McElroy's license had expired. Then, McElroy started his car and pulled it alongside defendant's patrol car, so that the two vehicles were facing opposite directions. As defendant reached for his ticket book, McElroy asked, "[W]hat are you doing?" He informed McElroy that he intended to give him a ticket for driving with an expired license. McElroy became verbally abusive.

Defendant stated that at that point, he instructed McElroy to calm-down, got out of his patrol car, and handed him a ticket. Meanwhile, defendant noticed McElroy's right hand moving under the seat "in a quick manner." In response, defendant quickly turned around to get his flashlight to see what McElroy was doing. At that point, he noticed McElroy "still moving quickly." Defendant yelled, "Police, stop." He then saw "a weapon" in McElroy's hand. McElroy turned toward him, and defendant began shooting. While firing the last shot, he stated he saw what looked like a hammer moving across the path of his flashlight.

A Missouri Highway Patrol criminal investigator interviewed defendant following his written statement. Defendant told the investigator essentially the same story. However, several inconsistencies were apparent. First, defendant said when he initially noticed McElroy's movements, he returned to his patrol car to retrieve his flashlight rather than twisting around to remove it from his person. He also claimed that when he returned to McElroy's car with his flashlight, McElroy was still reaching about under the seat, moving his hand in an erratic fashion. Then, defendant told the investigator he instructed

McElroy to get his hands in plain sight, but McElroy failed to comply. Next, he said he saw what appeared to be a weapon in McElroy's hand, and defendant began shooting. Although he did not know what the object was, defendant informed the investigator he knew it was a weapon.

Defendant was charged with second degree murder. The jury was instructed on second degree murder, which included a self-defense instruction, and a separate instruction on involuntary manslaughter, which contained no reference to self-defense. The jury found defendant guilty of manslaughter.

## II.

Beeler's single point on appeal is that the trial court erred in submitting the instruction on involuntary manslaughter because of the absence of evidence to support a finding that he acted in a reckless manner. He asserts that it is inconsistent to be acquitted of second degree murder where the evidence supports submission of self-defense and to be convicted of the lesser included offense of involuntary manslaughter. In the context of this case he is correct, but for a somewhat different reason than he asserts. The analysis of his claim centers on four statutes.

The first is sec. 565.024.1 which, in relevant part, provides:

A person commits the crime of involuntary manslaughter if he:

(1) recklessly causes the death of another person;

. . . .

The second statute is sec. 562.016.4. In relevant part, it states:

. . . .

A person "acts recklessly" or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

The third statute is sec. 565.025.2(2), which provides:

The lesser offenses of murder second degree are:

. . . .

(b) involuntary manslaughter under subdivision (1) of subsection 1 of section 565.025.

The fourth statute is sec. 556.046.2, a general provision of our criminal code. It states:

The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

## A.

Defendant argues that the word "reckless" means an unintentional or accidental act or consequence. He claims that the shooting that occurred here was unmistakably an intentional act done with an intent to kill in self-defense. This argument would have force if one were to resort to various common dictionaries for the definition of "reckless." However, the general assembly has, through sec. 562.061.4, provided a definition departing from both standard and legal dictionaries. That definition does not define "reckless" as an act done unintentionally or even as an intentional act done that has an unintended result. Rather, the statutory definition of "reckless" would include the conscious discharging of a firearm with disregard for a substantial and unjustifiable risk that death will result and that the conscious firing of the weapon constitutes a gross deviation from what a reasonable person would do to protect himself. The argument that only evidence of an accidental act or an accidental result supports involuntary manslaughter is incorrect. This conclusion is supported by a plain reading of the statutory definition. In addition, it is supported by the history behind that enactment.

Missouri's definition of "reckless" is derived from the Model Penal Code, part I, sec. 2.02. That provision is accompanied by a comment that affirms that a killing may be classified with purposeful homicide if the defendant acted in an unreasonable belief that the conduct was necessary to save his own life. *Model Penal Code* sec. 2.02 cmt. 1. This circumstance is often referred to as "imperfect self-defense."

This reading of our statutory definition is reinforced by the holding of courts of other states that have adopted nearly identical definitions of "reckless." For instance, the North Dakota Supreme Court identified this fact when faced with a similar argument. That court, in *State v. Clark*, 570 N.W.2d 195 (N.D.1997), considered a defendant's argument that his shooting of the victim was intentional. He argued that, under those circumstances, he was either guilty of murder or acted lawfully in self-defense. *Id.* at 199. The court rejected this assertion, stating, "The fact a shooting was intentional does not preclude a verdict of manslaughter [2] if the shooting resulted from an unreasonable belief in the necessity of using force." *Id.* The court held there was evidence of recklessness and, therefore, the trial court did not err in submitting a manslaughter instruction to the jury.

In *People v. Sullivan*, 68 N.Y.2d 495, 510 N.Y.S.2d 518, 503 N.E.2d 74 (1986), the accused, a New York City police officer, argued, as here, that he could not be indicted for reckless manslaughter because evidence indicated he would only be guilty of an intentional shooting. New York's highest court reversed the dismissal of the defendant's indictment for reckless manslaughter, concluding that his decision to shoot, albeit intentional, could be found reckless. *Id.* at 77.

Similarly, the Kentucky Supreme Court held in *Elliott v. Commonwealth*, 976 S.W.2d 416, 422 (Ky.1998), that a charge of reckless homicide does not preclude an instruction on self-defense.

Since adoption of our present scheme for punishing homicides, this Court has not spoken with regard to the correct definition of "reckless" in the context of an involuntary manslaughter case. Our court of appeals has spoken on numerous occasions. However, those cases do not appear to be consistent with the statutory definition. Part of this is attributable to the fact that the word "reckless" did not appear in our manslaughter statute prior to the enactment of present sec. 565.024, effective October 1, 1984. Prior to that, there was no distinction between voluntary and involuntary manslaughter. The former manslaughter statute extended to "every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide." *Sec. 565.005*, RSMo 1978. Even though that statute was repealed, the court of appeals has continued to cite cases relying on the former statute for the proposition that recklessness constitutes accidental or culpably negligent conduct. For example, *State v. Isom*, 906 S.W.2d 870, 873 (Mo. App.1995), cited to *State v. Hafeli*, 715 S.W.2d 524, 529 (Mo.App.1986). *Hafeli* was decided under the former statute, which used the term "culpable negligence." *Id.* at 526, fn. 1. *See also State v. Albanese*, 920 S.W.2d, 917, 925 (Mo.App.1996), citing *State v. Sanders*, 541 S.W.2d 530, 533 (Mo. banc 1976); *State v. Salem*, 780 S.W.2d 683, 685 (Mo.App.1989), again citing *Hafe-*

---

2. North Dakota does not subdivide the crime of manslaughter into voluntary and involuntary varieties. However, the state's manslaughter statute is almost identical to Missouri's involuntary manslaughter law. It defines manslaughter as "recklessly caus[ing] the death of another human being." N.D. Cent.Code sec. 12.1–16–02 (1997). North Dakota further defines reckless conduct in relevant part as "engag[ing] in conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct." *Id.* at sec. 12.1–02–02.1(c).

*li*;   *State v. Hamlett*, 756 S.W.2d 197 (Mo.App.1988 ), citing *State v. Newbold*, 731 S.W.2d 373, 381–82 (Mo.App.1987); *State v. Green*, 778 S.W.2d 326, 328 (Mo. App.1989), citing to *Hamlett* and *State v. Miller*, 772 S.W.2d 782, 784, which in turn cite to *Hafeli*. The pre-amendment cases of *Sanders, Newbold* and *Hafeli* were decided under the law in effect prior to October of 1984. In addition, *Hamlett* cites to other pre–1984 cases of this Court such as *State v. Adams*, 359 Mo. 845, 224 S.W.2d 54 (Mo.1949), and *State v. Pauly*, 267 S.W. 799, 801 (Mo.1924).

█ The *Hamlett* court specifically pointed out that the term "recklessly," as found in the involuntary manslaughter statute, connotes culpable negligence appearing in the "old manslaughter statute." As previously noted, the former statute did not use the word "reckless." Neither was "culpable negligence" defined in the earlier cases in exactly the way "reckless" is in today's code. The statutory definition of "reckless" conduct as it exists today is that the actor is liable for an intentional act if there is a conscious disregard of a risk of death to another and such disregard is a gross deviation from what a reasonable person would do in the circumstances. To the extent the cases relied on by the defendant stand for the proposition that self-defense in a homicide matter forecloses the possibility of an instruction on involuntary manslaughter because such offense requires an accidental act or unintended consequence, they are overruled.[3]

The defendant also relies on *State v. Anding*, 752 S.W.2d 59 (Mo. banc 1988), for his claim that no manslaughter instruction was permissible. In that case the defendant was charged with first degree murder involving premeditation and deliberation. The defendant had engaged a contract killer months in advance of the murder. The Court held that the evidence of premeditation and deliberation was so clear and compelling that the defendant was either "guilty of deliberate, premeditated murder or nothing at all." *Id.* at 62.

In addition to the defendant being charged with premeditated and deliberate murder, *Anding* is distinguishable on other grounds. The offense in *Anding* occurred in 1976, prior to adoption of our present homicide scheme, which includes involuntary manslaughter, prior to the current statutory definition of "reckless" being adopted, prior to the adoption of sec. 556.046 regarding when the courts were obligated to instruct on lesser offenses and prior to the adoption of sec. 562.021. The latter section provides that when recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly. No similar statute provides that evidence of premeditation and deliberation also establishes recklessness.

█ Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty. By contrast, to act knowingly is to be aware that the conduct is practically certain to cause a result. *Sec. 562.016.3.* In sum, reckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force.

**B.**

The third statute referenced above provides that involuntary manslaughter is a lesser included offense of second degree murder. *Sec. 565.025.2(2).* The other statute provides that lesser included offense instructions are permitted, but the court is not obligated to do so unless there is a basis for acquitting the defendant of the offense charged and convicting him of the included offense. *Sec. 556.046.2.*

**3.** The Court does not assume that the result in any of the cases cited was in error. Rather, as is noted from the discussion that follows, each case must be decided on its own facts to determine whether or not acquittal of the higher degree of an offense forecloses the instruction on a lower degree.

▮ This Court, in a different context, has addressed the circumstances in which a lesser included offense need not be instructed upon. In *State v. Santillan*, 948 S.W.2d 574, 576 (Mo. banc 1997), the Court noted the general principle that if a reasonable juror could draw an inference from the evidence that the defendant did not deliberate, the trial court should give a second degree murder instruction. Nevertheless, where the facts are such that no rational factfinder could conclude the defendant acted without deliberation, no second degree murder instruction is required. *State v. Mease*, 842 S.W.2d 98, 112 (Mo. banc 1992). Any doubt is to be resolved in favor of giving the lesser included offense instruction.

▮ Section 556.046.2 does not prohibit the giving of lesser included offense instructions. This is made clear from the phrase "[t]he court shall not be obligated" to give the lesser included instruction except in specified circumstances. In the plainest terms, the statute creates no prohibition on instructing on lesser included offenses. This Court cannot amend the statute to include obligations not imposed by the legislature. Nevertheless, if there is a logical inconsistency in giving a lesser included offense instruction in a particular factual context so as to result in some deprivation of right, such as double jeopardy, it would be error to so instruct even in the absence of a statutory prohibition on giving the instruction.

▮ Is the jury acquittal of a defendant of second degree murder where self-defense is in the case logically inconsistent with the submission of involuntary homicide? One rational explanation exists for giving the lesser included offense instruction. The jury could believe the defendant acted unreasonably in defending himself, but not believe defendant had the requisite intent for second degree murder; that is, he did not knowingly cause the victim's death or have a purpose to do great harm to the victim. *Sec. 565.021.1(2)*. The jury in such case would acquit of second degree murder. At the same time, the jury could consistently find that the homicide involved a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary for defendant to protect himself. Because there is neither a statutory prohibition nor a logical inconsistency between acquittal of second degree murder involving a claim of self-defense and conviction of involuntary manslaughter, the giving of the lesser included offense instruction is not necessarily error. Indeed, where the evidence permits an inference of reckless conduct and the state or accused requests the instruction, the trial court is obligated to give a proper involuntary manslaughter instruction.

C.

▮ However that does not foreclose the court's duty to determine if the giving of the particular instruction in the context of the facts of this case was proper. The jury was instructed in such a way that it could have decided (1) defendant's shooting of McElroy was done in self-defense and (2) defendant acted recklessly by consciously disregarding a risk that grossly deviated from reasonable behavior. Such conclusions are necessarily inconsistent. One cannot be said to act reasonably, as self-defense requires, and grossly deviate from reasonableness, as is the case with one exhibiting a reckless state of mind, at the same time.

▮ Here, it is apparent the jury was not properly instructed. Instructional error constitutes plain error when it is clear the trial court so misdirected or failed to instruct the jury so that it is apparent the error affected the verdict. *State v. Deck*, 994 S.W.2d 527, 540 (Mo. banc 1999), *cert. denied*, — U.S. —, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). The court instructed the jury in such a way that it could have found defendant acted reasonably and unreasonably at the same time.

Not only did the instruction not apprise the jury of the inconsistency in finding self-defense and reckless behavior but that

error was compounded when the prosecutor's argument served to reinforce the belief that no inconsistency existed. Twice the state more than suggested that inconsistent verdicts were permissible:

> Let me submit to you, however, that if—even if you should find the defendant not guilty of murder in the second degree, that is, you find there was self-defense, that is not the end of the job. Because, even if there was self-defense, he may still be guilty of involuntary manslaughter....
>
> ...
>
> And, I'm going to make the rest of this argument on the basis of 'what if?' If you don't find that there's murder second, and the only way you can do that is if you find it was self-defense, then you've got to look at what—involuntary manslaughter. And, folks, it doesn't matter if he acted in self-defense.

The state as much as conceded that the only factual basis for acquittal of second degree murder was that defendant acted in self-defense. In addition, during a discussion at the bench, defense counsel informed the court and the state of a problem with the language of the self-defense instruction itself. A plain reading of the instruction limits its application to second degree murder. It reads, "[I]f you have a reasonable doubt as to whether the State proved that the defendant did not act in lawful self-defense you must find the defendant not guilty of murder in the second degree." Counsel pointed out that as read, the jury could find defendant guilty of a lesser charge even though they also find he acted in self-defense.[4] The court refused to change the instruction, concluding that self-defense is not a defense to involuntary manslaughter. That conclusion may have been correct had the jury only been instructed on involuntary man-

slaughter, but the jury was also instructed regarding self-defense in the second degree murder instruction. The error could have been avoided by instructing the jury, as part of the manslaughter instruction, that if it determined defendant was not guilty of second degree murder because he acted in self-defense, the jury was required to acquit him of involuntary manslaughter.[5]

■■■ Without doubt, the theory of the state's second degree murder charge was that defendant's killing of McElroy was not done in reasonable self-defense. The defense theory was clearly that the shooting was a knowing and reasonable response to the aggressive and threatening conduct of McElroy. Both sides vigorously advanced their theories. Neither the state nor defendant argued that the real issue for the jury to decide was the nuance in difference between a homicide involving a knowing state of mind and a homicide resulting from a conscious disregard of risk. As the prosecutor put it in closing argument, the defendant admitted "[h]e knew or was aware that his conduct was causing or practically certain to cause death." In the circumstances of this proceeding, it is clear that the jury's acquittal of defendant on the second degree murder charge was based on the theory of self-defense. That verdict forecloses any further trial on the question of whether defendant acted reasonably.

## CONCLUSION

Accordingly, the judgment of conviction for involuntary manslaughter is reversed and the defendant discharged.

All concur.

---

4. Defense counsel objected not only to the submissibility of any involuntary manslaughter instruction, but also made a separate objection to the form of the instruction given.

5. This is a case of trial court error in giving inconsistent instructions made worse by improper argument regarding those instructions, not a case of inconsistent verdicts, as occurred in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).