**STATE of Missouri, Plaintiff/Respondent,**

v.

**Lewis DAVIS, Defendant/Appellant.**

**No. ED 75953.**

Missouri Court of Appeals, Eastern District, Division Four.

June 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 2000.

Application for Transfer Denied Oct. 3, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

HOFF, Judge.

Lewis Davis (Defendant) appeals from the trial court's judgment entered following a jury verdict convicting him of second degree murder in violation of Section 565.021 RSMo 1994,[1] and armed criminal action in violation of Section 571.015. The trial court sentenced Defendant to consecutive terms of thirty years for second degree murder and ten years for armed criminal action. We reverse and remand for a new trial in light of *State v. Beeler*, 12 S.W.3d 294 (Mo. banc 2000), due to the trial court's failure to give an involuntary manslaughter instruction.

The State charged Defendant with second degree murder and armed criminal action in the shooting death of David Crawford on November 29, 1994. After the first trial resulted in convictions on the charged offenses, the trial court sentenced Defendant to consecutive terms of twenty-five years for second degree murder and five years for armed criminal action. We reversed that judgment for the trial court's failure to give a voluntary manslaughter instruction, and remanded the matter for a new trial. *State v. Davis*, 954 S.W.2d 6 (Mo.App. E.D.1997).

In the second trial that is the subject of this appeal, the trial court instructed the jury on second degree murder, the lesser-

---

1. Subsequent statutory citations are to RSMo 1994, unless otherwise noted.

included offense of voluntary manslaughter, and self-defense. The trial court rejected Defendant's proferred involuntary manslaughter instruction. The jury convicted Defendant of second degree murder and armed criminal action. The trial court denied Defendant's motion for judgment of acquittal, or in the alternative, motion for new trial, and sentenced Defendant to consecutive terms of thirty years for second degree murder and ten years for armed criminal action. Defendant appeals from the trial court's judgment.

In his first point, Defendant contends the trial court erred in refusing to submit his proposed instruction on the lesser-included offense of involuntary manslaughter.

■ The second degree murder offense with which Defendant was charged requires that the defendant cause the death of a person either "[k]nowingly" or "with the purpose of causing serious physical injury." Section 565.021.1(1). Involuntary manslaughter under Section 565.024.1(1) requires that the defendant "[r]ecklessly cause[ ] the death of another person." Involuntary manslaughter under Section 565.024.1(1) is a lesser-included offense of second degree murder. Section 565.025.2(2)(b).

■ A trial court must give a requested instruction on a lesser-included offense only when the evidence establishes a basis for acquittal of the charged offense and conviction of the lesser-included offense. *State v. Hill*, 17 S.W.3d 157, 159 (Mo.App. E.D.2000); Section 556.046.2. Any doubt about whether or not to instruct on an included offense should be resolved "in favor of instructing on the included offense." *State v. Yacub*, 976 S.W.2d 452, 453 (Mo. banc 1998).

■ When considering whether a defendant was entitled to a particular instruction, we review the evidence in the light most favorable to the defendant. *Hill*, 17 S.W.3d at 159 (citing *State v. Cole*, 377 S.W.2d 306, 307 (Mo.1964)). Viewed

most favorably to Defendant, the evidence shows that: Several months prior to the shooting, Crawford had told an acquaintance of Defendant that Crawford wanted to kill Defendant and, on one occasion, Crawford shot at the house where Defendant lived. On November 29, 1994, Defendant was at the apartment of a friend, Craig Goudeau, when the victim, Crawford, arrived and asked Defendant and the others there for money. According to Defendant, Crawford accused him of owing Crawford $500.00 for some stolen drugs. Defendant, however, claims he had not stolen Crawford's drugs. Defendant testified Crawford showed him what looked like the handle of a gun in Crawford's waistband. At Goudeau's request, Crawford stepped outside. Defendant overheard Crawford tell Goudeau that "he was going to kill this little punk-ass nigger." Defendant then got a gun from a bedroom closet, and put it in his pocket. There was no door to the apartment other than the front door. Defendant went outside and saw Crawford sitting in the front passenger seat of a parked car. Several people were standing near the driver's door of that vehicle. Defendant approached that car and stood near the middle of the passenger side, between the front and back doors. Defendant told Crawford he did not steal Crawford's drugs. Crawford responded "F___ that s___ old punk-ass nigger, I'm going to kill you," and reached toward his waist, where earlier that afternoon Defendant had seen what he thought was a gun. Defendant stuck his hand with the gun in it into the car between the open back door and the car frame, and pulled the trigger. Crawford died from a single shot to his head. Defendant testified he pulled the trigger because "that was the only way [he] could stop [Crawford] from killing [him]."

After firing the gun, Defendant kicked the back door and said, "F___ that nigger." The other people standing nearby asked Defendant why he had shot Crawford. Defendant responded, "he shouldn't

[have] said what he was going to do to [me]."

Defendant then went home and told his mother he had shot Crawford, telling her "[h]e made [me] do it." When his stepfather returned from work that evening, Defendant turned himself in at the police station.

A year after the shooting, Defendant wrote a letter to Crawford's mother, telling her in part that he "never meant for anyone to get hurt. The whole incident was just a dope deal gone bad. It's another example of two young black men trapped in America's dope game where the end result is self-destruction." He continued, "Even though I felt my life was in danger, my action can never be justified."

We find *Beeler, supra,* and *Hill, supra,* dispositive of this point.

In *Beeler,* the defendant, while standing outside the driver's door of a stopped vehicle, shot several times at the victim who was in the driver's seat and had, as the defendant testified, grabbed a hammer. *Beeler,* 12 S.W.3d at 295–96. The State charged the defendant with second degree murder. *Id.* at 297. During trial, the jury was instructed on second degree murder, with a self-defense instruction, and on involuntary manslaughter, without a reference to self-defense. *Id.* The jury found the defendant guilty of involuntary manslaughter. *Id.* at 295, 297. On appeal, the defendant urged it was error to give the involuntary manslaughter instruction due to "the absence of evidence to support a finding that he acted in a reckless manner." *Id.* at 297. The Missouri Supreme Court concluded it was proper to give an involuntary manslaughter instruction but reversed upon finding the wording of the instruction improper. *Id.* at 300–01.

■ The Missouri Supreme Court found the statutory definition of "reckless" would include the conscious discharging of a firearm with disregard for a substantial and unjustifiable risk that death will result and that the conscious firing of the weapon constitutes a gross deviation from what a reasonable person would do to protect himself.

*Id.* at 297. The Court also concluded that "reckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force." *Id.* at 299. Finally, the Court found there was no statutory prohibition against the giving of a lesser-included manslaughter instruction and it was not logically inconsistent to give one under the circumstances. *Id.* at 300. For instance, the Court noted,

> The jury could believe the defendant acted unreasonably in defending himself, but not believe defendant had the requisite intent for second degree murder; that is, he did not knowingly cause the victim's death or have a purpose to do great harm to the victim. Sec. 565.021.1(2). The jury in such case would acquit of second degree murder. At the same time, the jury could consistently find that the homicide involved a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary for defendant to protect himself.

*Id.* The Supreme Court reversed, however, due to the language used in the involuntary manslaughter instruction given to the jury. *Id.* at 300–01.

■ *Beeler* establishes that it is proper to consider giving an involuntary manslaughter instruction in a case, such as this one, involving a shooting death of a person in a stopped vehicle, where second degree murder is charged and self-defense is at issue. The fact that *Beeler* involved multiple gunshots and this case involves death by one gunshot to the victim's head is not a dispositive factual distinction. See *Hill,* supra.

In *Hill,* we applied *Beeler* to reverse a voluntary manslaughter conviction for the killing of a person in a bar by one gunshot

to the victim's temple. *Hill,* 17 S.W.3d at 159. In that case, the defendant was charged with murder in the first degree and armed criminal action. *Id.* at 158. We noted the record revealed defendant had not meant for "it to happen"; the assault involved "an oral threat by [the victim], and movement of [the victim's] hand which defendant concluded was an attempted robbery with a weapon," and "[d]efendant used his gun believing it was necessary to protect himself." *Id.* at 158–59.

Here, viewing the evidence favorably to Defendant we find, as in *Hill,* that the victim orally threatened Defendant with death and moved toward what Defendant thought was a gun, Defendant shot the victim once thinking it was necessary to protect himself, and Defendant had not intended to hurt Crawford.[2] The jury could have found that, in shooting Crawford, Defendant acted "recklessly" as defined by Section 562.016.4 and *Beeler, supra,* for involuntary manslaughter, rather than acting knowingly or "with the purpose of causing serious physical injury" as required for the charged second degree murder offense.

Defendant's convictions must, therefore, be reversed and remanded for new trial. *See Hill, supra* (reversing and remanding both the voluntary manslaughter and armed criminal action convictions due to *Beeler* ). In light of this decision, we will not address Defendant's second point, which focuses on the longer sentence he received upon retrial.

Judgment reversed and remanded for new trial.

WILLIAM H. CRANDALL, Jr., P.J. and ROBERT E. CRIST, S.J.: Concur.

---

**2.** While here the State has not conceded the need for reversal and remand in light of *Beeler, supra,* as the State conceded in *Hill, supra,* we note the State has not filed opposition or

any other response to Defendant's references to the application of *Beeler* and *Hill* in this case.