**STATE of Missouri, Respondent,**

v.

**Demetrius BATTLE, Appellant.**

**No. ED 76669.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 21, 2000.

James C. Ochs, Richard D. Klein, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

MARY RHODES RUSSELL, Judge.

Demetrius Battle ("defendant") appeals from a judgment entered after a jury verdict convicting him of murder in the second degree in violation of section 565.021 RSMo 1994,[1] and armed criminal action in violation of section 571.015. Defendant was sentenced to concurrent terms of life imprisonment for second-degree murder and thirty years for armed criminal action. Defendant contends that the trial court erred in refusing to instruct the jury on the lesser included offenses of voluntary manslaughter and involuntary manslaughter. We agree in that the court must instruct on a lesser included offense if there is a basis for acquittal of the charged offense and conviction of the lesser included offense. We reverse and remand for a new trial.

In determining whether a basis existed to support a lesser included offense instruction, we recite the facts and review the evidence in the light most favorable to the defendant. *State v. Hill,* 17 S.W.3d 157, 159 (Mo.App.2000). In the early morning on May 10, 1998, defendant went to a nightclub in downtown St. Louis, where he met his girlfriend. The victim, King Wade Jones ("victim"), who had formerly dated and had a child with defendant's girlfriend, was also at the nightclub. Victim apparently believed that defendant and his girlfriend were interfering with his ability to see his child. While at the nightclub, victim made sarcastic remarks to defendant's girlfriend and continuously stared at her and defendant. Victim nudged defendant several times with his elbow so as to spill defendant's drink and, while glaring at him in an intimidating manner, stated, "What the f___ you looking at?" and "You ain't going to keep me from my kid."

Defendant and his girlfriend left the nightclub at 3 a.m., just as it was closing. As defendant and his girlfriend were standing near defendant's car, victim parked his car nearby and began complaining to a friend that defendant's girlfriend would not let him see his child. He stated that he wished he had not bought her something for Mother's Day. Victim became enraged when he heard someone yelling from the direction of defendant and his girlfriend. He jumped out of his car and yelled towards defendant and his girlfriend, "What the f___ did you say?" Defendant and his girlfriend did not reply, but got in defendant's car and left. Victim remained in the parking lot for a few more minutes, while his friend tried to calm him down. Victim then left by himself and followed after defendant and his girlfriend.

While travelling west on Interstate 70, victim pulled up behind defendant's car and began flashing his headlights. Victim then pulled his car alongside defendant's and demanded that defendant pull over.

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

When defendant refused, victim swerved at defendant's car several times in an unsuccessful attempt to run defendant's car off the road. Defendant sped up but was unable to elude victim, who followed defendant to his St. Charles County residence at speeds of up to 100 miles per hour.

As defendant was pulling into his driveway, he told his girlfriend, "Let's run inside." Defendant then parked the car with the lights on and the engine running, jumped out, and ran to the front door of his residence. Before his girlfriend could get out of the car, however, victim was at her door. Victim reached inside the car and struck defendant's girlfriend in the face. Defendant's girlfriend then exited the car screaming and crying. She repeatedly implored victim to leave, at which point victim grabbed her shirt and neck and said, "You stupid bitch, I'll f_____ kill you. You don't know who I am."

While unlocking the door to his residence, defendant witnessed the altercation between his girlfriend and victim. He was frightened and ran inside "to try to find something to scare [victim] off." He stumbled down his basement stairs and, upon hearing his girlfriend screaming outside, grabbed a gun from his bedroom. He ran outside with the gun pointed at victim and, in a scared and frightened voice, commanded him to leave. Victim replied, "You stupid f____, you don't know who the f___ I am.... F___ you, you ain't doing shit to me. You don't know who I am. This is—this is not over." After defendant told him to leave three or four times, victim started to get into his car, but the two men continued arguing. As victim was getting into the car, he grabbed the gun and tried to pull it away from defendant. The gun, however, discharged. Defendant did not know where the first shot went, but saw victim turn and lean toward the passenger seat in the direction of the glove compartment. Defendant believed victim was trying to grab a weapon, so he panicked and fired two more shots. The gun discharged a fourth time when it hit

the car door as defendant was backing away from the car.

Evidence adduced at trial indicated that all four shots struck victim. The first bullet entered victim's left cheek, just below the cheekbone. There was no evidence that this wound rendered victim unconscious. The sequence of the final three shots was unclear. One of the bullets grazed the back of victim's left shoulder. The other two bullets struck victim in the left back area, puncturing victim's lung and aorta. These were the fatal shots.

The jury was instructed on first-degree murder, second-degree murder, self-defense, and armed criminal action. Defendant was convicted of murder in the second degree and armed criminal action, for which he was sentenced to concurrent terms of life imprisonment and thirty years, respectively. He now appeals.

Defendant contends the trial court erred in failing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter.

■■■■ A trial court must instruct on a lesser included offense if there is a basis for acquittal of the charged offense and conviction of the lesser included offense. Section 556.046.2; *Hill*, 17 S.W.3d at 159. A defendant is entitled to a requested instruction that is supported by the evidence and any inferences logically flowing from the evidence. *Id.* The court should submit a requested instruction, "if the evidence arguably shows lack of an essential element of the higher offense which would not only authorize acquittal of the higher, but sustain conviction of the lesser." *Id.* Any doubts about whether to instruct on a lesser included offense should be resolved in favor of instructing on the lesser offense, leaving it to the jury to decide which of two or more grades of an offense, if any, the defendant is guilty of. *Id.; State v. Santillan*, 948 S.W.2d 574, 577 (Mo. banc 1997).

Voluntary manslaughter occurs when one causes the death of another under

circumstances that would constitute murder in the second degree except that the death was caused "under the influence of sudden passion arising from adequate cause." Section 565.023.1(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7). "Adequate cause" means "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair [his] capacity for self-control." Section 565.002(1).

The concept of sudden passion arising from adequate cause is an objective standard that is measured by the ordinary person's capacity for self-control. *State v. Fears*, 803 S.W.2d 605, 609 (Mo. banc 1991). Passion may be rage, anger, or terror, but it must be so extreme that, for the moment, the action is being directed by passion rather than reason. *Id.* Sudden passion is not established where there has been time for the passion to cool. *Id.* To be "adequate," the provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person and must result from a sudden, unexpected encounter or provocation tending to excite the passion beyond control. *Id.* Words alone, no matter how offensive or insulting, are not sufficient to show adequate provocation. *Id.* The defendant has the burden of injecting the issue of influence of sudden passion arising from adequate cause. Section 565.023.2.

In the hours preceding the shooting, victim continuously glared at defendant and his girlfriend; nudged defendant several times so as to spill his drink; tried to run defendant's car off the road; followed defendant to his residence at speeds of up to 100 miles per hour; physically struck defendant's girlfriend on multiple occasions; and made numerous threatening remarks to defendant and his girlfriend, such as "I'll kill you" and "This ain't over." Victim also lunged for defendant's gun, causing it to discharge. Victim then leaned toward the passenger seat in the direction of the glove compartment. Defendant did not know that the first shot struck victim and, in any event, there is no evidence that the first shot rendered victim unconscious and incapable of reaching for or using a weapon on defendant or his girlfriend. All these events were close in time, particularly those occurring at defendant's residence, and could have caused a reasonable person to lose control and act out of passion rather than reason. On these facts, there is a basis for the jury to have convicted defendant of voluntary manslaughter and, therefore, the trial court erred in not instructing on voluntary manslaughter.

The crime of involuntary manslaughter requires that the defendant recklessly cause the death of another person. Section 565.024.1(1). A person acts recklessly if he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.4. Recklessness is similar to knowing conduct in that it involves awareness, but it is an awareness of risk that is of a probability less than a substantial certainty. *State v. Beeler*, 12 S.W.3d 294, 299 (Mo. banc 2000). By contrast, the second-degree murder offense of which defendant was convicted requires that he cause the death of a person either knowingly or with the purpose of causing serious physical injury. Section 565.021.1(1). To act knowingly is to be aware that the conduct is practically certain to cause a result. Section 562.016.3.

The Supreme Court of Missouri has found that recklessness includes the conscious firing of a gun with disregard for a substantial and unjustifiable risk that death will result and that such conduct constitutes a gross deviation from

what a reasonable person would do to protect himself. *Beeler*, 12 S.W.3d at 297. Thus, the court concluded, reckless conduct is not inconsistent with self-defense where unreasonable force is used. *Id.* at 299. The court explained:

The jury could believe the defendant acted unreasonably in defending himself, but not believe defendant had the requisite intent for second degree murder; that is, he did not knowingly cause the victim's death or have a purpose to do great harm to the victim. The jury in such case would acquit of second degree murder. At the same time, the jury could consistently find that the homicide involved a conscious disregard of a substantial and unjustifiable risk of death to the victim and that the force used was a gross deviation from that force reasonably necessary for defendant to protect himself. Because there is neither a statutory prohibition nor a logical inconsistency between acquittal of second degree murder involving a claim of self-defense and conviction of involuntary manslaughter, the giving of the lesser included offense instruction is not necessarily error. Indeed, where the evidence permits an inference of reckless conduct and the state or accused requests the instruction, the trial court is obligated to give a proper involuntary manslaughter instruction.

*Id.* at 300 (citation omitted).

This court has previously recognized that, under *Beeler*, it is proper to give an involuntary manslaughter instruction in a factual situation such as this, where second-degree murder is charged and self-defense is at issue in the shooting death of a person in a stopped vehicle. *State v. Davis*, 26 S.W.3d 329, 332 (Mo.App.2000).

■ A reasonable jury could have found that defendant acted recklessly when he responded to the perceived threat of a weapon by aiming and discharging his gun in defendant's direction. The jury could believe that defendant lacked the intent for second-degree murder, while

also determining that defendant disregarded a substantial and unjustifiable risk that death would result and that the force used was a gross deviation from what a reasonable person would do to protect himself. Thus, the trial court erred in failing to give an involuntary manslaughter instruction. Point granted.

We do not address defendant's remaining points on appeal as their resolution would require an analysis of facts and circumstances existing at the time of this trial, which will likely be different when the case is retried.

Reversed and remanded for a new trial consistent with this opinion.

ROBERT G. DOWD, Jr., P.J., and RICHARD B. TEITELMAN, J., concur.