

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| DAMION THOMAS, | ) | No. ED112551 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 23SL-CC00346 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Respondent. | ) | FILED: April 29, 2025 |

### Introduction

Damion Thomas (Thomas) appeals the judgment denying his Rule 29.15[1] amended motion for post-conviction relief. Thomas's amended motion alleged that (1) trial counsel was ineffective for failing to argue that Thomas was guilty only of involuntary manslaughter, (2) Thomas was prejudiced by the State's non-disclosure of promises made to a key witness, and (3) trial counsel was ineffective for failing to rebut the State's argument in closing regarding Victim's arm position. We disagree and affirm the motion court's judgment.

### Factual and Procedural Background

On May 18, 2020, Thomas knocked on P.H.'s[2] apartment door early in the morning and upon not receiving an answer, asked through P.H.'s window if he could be let in. P.H., Victim,

---

[1] All rule references are to the Missouri Supreme Court Rules (2023).

[2] The personal identifying information of the witness and victim have been omitted pursuant to section 509.520, RSMo (Cum. Supp. 2023).

and P.H.'s and Thomas's infant son were inside the apartment. While P.H. answered the door, Victim retrieved a hand gun from the bedroom closet. Once inside, Thomas walked towards the bedroom with his own gun tucked under his arm, ignoring P.H.'s instructions to sit in the living room. Standing between the living room and kitchen, P.H. heard an argument followed by a gunshot. P.H. became nauseous and ran into the bathroom. From there, P.H. heard Victim say he was going to leave and heard Thomas ask Victim what he was doing before fatally shooting Victim. Following the shooting, Thomas told P.H. to take their son, go to P.H.'s grandmother's house, and call the police. P.H. left and returned multiple times before finally going to her grandmother's house and calling the police. Police arrived and quickly found Victim's body outside in the courtyard and several indications that somebody had attempted to clean up P.H.'s apartment. Thomas had already left the scene.

Thomas was charged with first-degree murder for shooting and killing Victim. The case proceeded to trial on April 26, 2021. At trial, Thomas testified that when he walked into the bedroom, Victim was seated on the bed pointing a gun at him, which is why he first shot Victim. Thomas claimed that Victim continued pointing his gun, so Thomas moved closer before firing a second shot, fatally striking Victim in the head. Thomas testified on cross-examination that he called some of his friends to come help him clean up and that he dragged Victim outside before leaving the scene. A jury found Thomas guilty of the lesser-included second-degree murder. The trial court entered judgment on the jury's verdict and sentenced Thomas to 30 years in prison. This Court affirmed the judgment and sentence in *State v. Thomas*, 653 S.W.3d 918 (Mo. App. E.D. 2022).

Thomas sought post-conviction relief under Rule 29.15, and appointed counsel timely filed an amended motion. At the evidentiary hearing on October 26, 2023, P.H. testified that in

2

exchange for her testimony at Thomas's trial, the prosecuting attorney promised to get her discharged from probation early, to clear an eviction from her record, and to dismiss pending theft charges in Illinois. P.H. testified that she could not remember whether these conversations occurred over the phone or in person, or even whether the theft charges were pending in state or federal court. P.H. also revealed she had memory problems following a 2012 brain surgery.

Trial counsel testified that he filed a motion for discovery, which included a request for *Brady*[3] material. Trial counsel did not receive any disclosure from the State regarding promises made to P.H. in exchange for her testimony. Had he received such information, he would have used it in his cross-examination of P.H. Trial counsel further testified that at the time of Thomas's trial, he was vaguely familiar with imperfect self-defense, believing it applied to voluntary manslaughter. Due to this mistaken belief, trial counsel did not see the benefit of pursuing voluntary manslaughter when it carried up to life imprisonment due to Thomas's persistent felony offender status. Lastly, on the topic of Victim's arm positioning, trial counsel stated that although he did not know why he did not rebut the State's argument, he believed the State's argument was not particularly effective.

The State elicited testimony from both prosecuting attorneys and the State's victim advocate. The lead prosecuting attorney testified that he made no promises to P.H. in exchange for her testimony. He stated further that he has never made such promises to a witness in any case and would never do so because it is unethical and would taint the witness's testimony. The State's co-counsel testified that he also made no such promises to P.H. Lastly, the State's victim advocate testified that these topics never came up in her conversations with P.H.

The motion court denied Thomas's motion for post-conviction relief. This appeal follows.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

<u>Standard of Review</u>

Appellate court review of denial of post-conviction relief is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *State v. Ferguson*, 20 S.W.3d 485, 503 (Mo. banc 2000). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Ferguson*, 20 S.W.3d at 503.

<u>Discussion</u>

To obtain post-conviction relief for ineffective assistance of counsel, Thomas is required to satisfy the two-pronged *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thomas must show "by a preponderance of the evidence that (1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) his counsel's deficient performance prejudiced him." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (per curiam).

To succeed on the first *Strickland* prong, Thomas is required to overcome a strong presumption that trial counsel's representation was reasonable by pointing to specific actions or omissions that, given the circumstances, fell outside the wide range of competent assistance of counsel. *Id.* Second, Thomas must demonstrate a reasonable probability that but for trial counsel's errors, the outcome would have been different. *Id.* If Thomas fails to satisfy either prong, his ineffective assistance claim fails, and we need not consider the other prong. *Moore v. State*, 659 S.W.3d 635, 639 (Mo. App. E.D. 2023).

*Point I – Imperfect Self-Defense*

First, Thomas claims the motion court clearly erred in denying his motion for post-conviction relief because, in addition to pursuing a self-defense-based acquittal, trial counsel

should have argued that Thomas was guilty only of involuntary manslaughter based on imperfect self-defense. We disagree because counsel did not perform unreasonably under the circumstances and because Thomas was not prejudiced.

Courts inquire "into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011); *Flaherty v. State*, 694 S.W.3d 413, 421 (Mo. banc 2024). Trial counsel cannot be ineffective for pursuing one reasonable trial strategy to another's exclusion. *Ferguson*, 20 S.W.3d at 508. More specifically, "even if imperfect self-defense were an available alternative, ineffective assistance of counsel cannot be established where counsel pursued one reasonable trial strategy to the exclusion of another." *Reed v. State*, 649 S.W.3d 86, 92 n.9 (Mo. App. W.D. 2022) (internal quotation omitted).

Thomas fails to establish that trial counsel's performance was deficient. Even though trial counsel's understanding of imperfect self-defense was itself imperfect, it was not his subjective state of mind that mattered, but whether his actions during the trial were objectively reasonable. *See Harrington*, 562 U.S. at 110. Thomas's trial testimony provided a viable self-defense claim. He was adamant that Victim continued pointing a gun at him. Arguing that, alternatively, Thomas used unreasonable force in defending himself, would have conflicted with Thomas's testimony. Pursuing outright acquittal based on self-defense was objectively reasonable under the circumstances.

Thomas also failed to demonstrate that he was prejudiced by trial counsel's decision. When imperfect self-defense is raised, defendants are entitled to an involuntary manslaughter instruction. *State v. Beeler*, 12 S.W.3d 294, 300 (Mo. banc 2000). Here, even though trial counsel did not argue imperfect self-defense, the jury was instructed on involuntary manslaughter. Thomas was not prejudiced by trial counsel's failure to argue imperfect self-defense when the jury was

5

nevertheless instructed on involuntary manslaughter. Accordingly, the motion court did not clearly err in finding Thomas received effective assistance of counsel. Point denied.

*Point II – Undisclosed Promises*

In Point II, Thomas argues the motion court clearly erred in finding that he was not prejudiced by the State's failure to disclose promises made to P.H. in exchange for her trial testimony. We disagree because the motion court found that P.H. was not credible and that the evidence of promises did not exist.

In reviewing the motion court's findings and conclusions, appellate courts "defer to the motion court's superior opportunity to judge the credibility of witnesses and recognize the circuit court is entitled to believe all, part, or none of the evidence presented." *Flaherty*, 694 S.W.3d at 419 (internal quotation omitted).

The motion court did not clearly err in finding that Thomas failed to establish that the evidence at issue, promises made to P.H. in exchange for her trial testimony, existed. The motion court found P.H.'s testimony not credible, noting that she could not remember critical details about these alleged conversations with the prosecuting attorneys or her criminal proceedings. The motion court further found the testimony of the prosecuting attorneys, that they made no such promises to P.H., to be credible. No other evidence was presented in support of this claim. Because we defer to the motion court's superior ability to judge the credibility of witnesses, we need not conduct a *Brady* analysis. *See Flaherty*, 694 S.W.3d at 419. Thomas could not have been prejudiced by a failure to disclose evidence that did not exist. Point denied.

*Point III – Closing Argument*

Lastly, Thomas alleges that the motion court clearly erred in denying his motion for post-conviction relief because trial counsel failed to argue in closing that Victim could have pointed a

6

gun at Thomas while also having his arm against his side in a seated position. We disagree because trial counsel's performance was not deficient and Thomas was not prejudiced.

When conducting closing argument, failure to include all of the arguments that support the defense does not necessarily render counsel ineffective. *Yarborough v. Gentry*, 540 U.S. 1, 7 (2003) (per curiam); *McLemore v. State*, 635 S.W.3d 554, 564 (Mo. banc 2021). "[J]udicious selection of arguments for summation is a core exercise of defense counsel's discretion." *Yarborough*, 540 U.S. at 8. Criminal defendants are not guaranteed "perfect advocacy judged with the benefit of hindsight." *Id*.

Trial counsel's closing argument did not amount to deficient performance. Trial counsel sufficiently rebutted the State's claim regarding the medical examiner's testimony about Victim's body position. The medical examiner testified that the bullet trajectory was consistent with the gun being held above Victim and aimed downwards, indicating Thomas could have been standing while Victim was sitting. The State in closing argued that Victim could not have been pointing a gun at Thomas because the medical examiner's testimony showed Victim's arm was against his body when he was shot. Trial counsel argued that none of the medical examiner's testimony was inconsistent with the defense's trial theory. At the evidentiary hearing, trial counsel testified that he did not think the State's argument was particularly effective. Choosing not to further address this topic was soundly within trial counsel's discretion.

Thomas further failed to establish that he was prejudiced by this decision, as additional argument on the subject would not have changed the outcome of the trial. The State produced ample evidence to establish Thomas's guilt. If trial counsel had rephrased his closing to mention Victim's arm position, there is not a reasonably probability it would have changed the result. Point denied.

## Conclusion

For the reasons set forth above, we affirm the motion court's judgment.

_____
Virginia W. Lay, J.

Lisa P. Page, P.J., concurs.
Rebeca Navarro-McKelvey, J., concurs.