STATE of Missouri, Respondent,

v.

Kanita THOMAS, Appellant.

No. SC 86488.

Supreme Court of Missouri,
En Banc.

May 10, 2005.

Henry B. Robertson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Lisa M. Kennedy, Assistant Attorney General, Jefferson City, for respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

Kanita Thomas was convicted by a jury of murder in the second degree and armed criminal action under sections 565.021 and 571.015, respectively.[1] The trial court, following the jury's recommendation, sentenced Thomas to twenty-five years for murder and fifteen years for armed criminal action and ordered the sentences to be served concurrently. On appeal, Thomas' primary claims are that the court erred in refusing to instruct the jury on self-defense and involuntary manslaughter. After opinion of the Court of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. Having determined that the trial court erred in failing to instruct the jury on involuntary manslaughter, the judgment is reversed and the case is remanded. Because of the likelihood that the issue of self-defense will be raised again on retrial, this Court will address that issue as well.

## I. Facts

On December 2, 2001, Thomas killed her boyfriend, Edward Anthony Jefferson, when she stabbed him in the chest. The events leading to the killing began when Jefferson, who appeared intoxicated, came home to the third-floor studio apartment he shared with Thomas and confronted Thomas and a girlfriend who were preparing for a party. Thomas asked where Jefferson had been, and he replied, "bitch, don't say nothing to me." Thomas continued to look through her clothes for a particular shirt she wanted to wear to the party. Jefferson dozed on the sofa for a minute, then jumped up and told Thomas

---

1. All statutes are RSMo 2000 unless otherwise indicated.

to get out of the apartment, again calling her "bitch." When she asked Jefferson why he treated her that way, he slapped her.

Thomas then went into the kitchen area of their apartment, picked up a knife, returned to the bedroom, and continued to look for clothes to wear to the party. Meanwhile, Jefferson angrily paced around the apartment, calling Thomas a "bitch" and telling her she was "going to eat that knife." He told Thomas' friend to leave, and she did so, stepping down the stairs outside the front door to the apartment. At that point, Thomas told Jefferson she did not appreciate him acting that way in front of her friend, and Jefferson then told Thomas to "get out." She walked out of the apartment, carrying the knife with her, while Jefferson was still inside, but she hesitated on the front door step, unlocked the door and reentered. A fight ensued, and she stabbed Jefferson in the chest. At trial, Thomas described the incident in this way: "I went out the apartment and then I went [back] and unlocked the door because he had slammed the door in my head, and then I went back in just a little bit and I just closed it and he came towards me and said, 'Bitch,' and he had his fist up and I still had the knife in my hand and I just jerked it and told him to get back, and it happened so quick." Thomas testified she stepped back, covered her face with her arm, and "jerked" the knife at Jefferson twice. She said she felt the knife touch him, but had not intended to stab him. Jefferson died from a four-inch deep stab wound that punctured his pericardial sac and pulmonary artery.

## II. Self–Defense

■ The trial court is required to instruct on self-defense where the evidence, viewed in the light most favorable to the defendant, is sufficient to put self-defense at issue. *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992). The substance of this defense is set out in section 563.031, which states in pertinent part:

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such a person....

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury....

■ According to the case law interpreting this statute, to support a self-defense instruction, the evidence must show: (1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death; (3) a reasonable cause for the defendant's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984).

■ A self-defense instruction is not appropriate if the defendant renewed or continued the confrontation, because behavior of that sort is inconsistent with the requirement that defendant avoid the danger and the need to take a life. *Id.* The "renewal" cases are most often characterized by a renewal of the confrontation after either 1) the initial victim left the scene to obtain a weapon, as in *State v. Henson,* 552 S.W.2d 378 (Mo.App.1977), and *State v. Bray,* 818 S.W.2d 291 (Mo.

App.1991), or 2) a significant break in the confrontation is made when the defendant removes himself or herself from the confrontation before coming back to renew the fight, as in *State v. Adkins,* 537 S.W.2d 246 (Mo.App.1976). The case at hand is more in the nature of a continuation of the confrontation rather than a renewal because only a few seconds elapsed from the time that Thomas exited the apartment and her reentry, and there was no significant break in the action.

On the record presented, Thomas did indeed continue the confrontation. Instead of leaving the premises, she unlocked, opened, and reentered the apartment, brandishing the knife in front of her. This conduct precludes a plea of self-defense because she did not do everything within her power, consistent with her personal safety, to avoid the danger and the need to take a life. *State v. Avery,* 120 S.W.3d 196, 201 (Mo. banc 2003).

Thomas' excuse for failing to leave the premises and disengage the confrontation was that, "I didn't go down the steps because I probably would have fell so I just stepped back." In context, this does not appear to be an assertion that she could not have used the stairs before she chose to reenter the apartment, but rather an assertion that after her reentry, she could not have just turned and fled. This assertion, however, does not explain why she would have fallen. To the extent that her claim suggests that somehow it was unsafe to retreat down the steps, whether before or after she reentered the apartment, it is wholly refuted by the record. There was no evidence that the condition of the stairway had changed since she arrived at the apartment, and indeed her friend made it safely down the stairs just minutes before. In addition, soon after the stabbing occurred, a neighbor on the second floor brought a towel up to Thomas on the third floor and returned to her apartment without incident. There was simply no evidence that the stairs were obstructed in any way, or were wet, or ice-covered, or, unsafe in any manner. Again, in deciding not to leave when there was an opportunity for her to move to safety, appellant's actions, in reentering the apartment, were inconsistent with avoiding the danger. In the absence of sufficient evidence to support a self-defense instruction, the trial court did not err in refusing to submit the instruction.

### III. Manslaughter Instructions

■■■ A trial court is required to instruct the jury on a lesser-included offense only if there is a basis in the evidence for acquitting the defendant of the offense charged and convicting the defendant of the lesser offense. Sec. 556.046.2, RSMo Supp.2001. The evidence is to be viewed in the light most favorable to the defendant, *State v. Craig,* 33 S.W.3d 597, 601 (Mo.App.2000), and when in doubt, the trial court should instruct on the lesser-included offense, *State v. Hibler,* 5 S.W.3d 147, 148 (Mo. banc 1999).

Involuntary manslaughter is a lesser-included offense of second degree murder. Sec. 565.025.2(2)(c). A person commits murder in the second degree if he or she "knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." Sec. 565.021.1(1). "Knowingly" and "purposely" are the relevant mental states for second degree murder. "Knowingly" means the person is "aware of the nature of [his or her] conduct," or "aware that [his or her] conduct is practically certain to cause that result." Sec. 562.016.3. Acting "purposely" occurs when it is a person's "conscious object to engage in that conduct or to cause that result." Sec. 562.016.2.

■■■ On the other hand, involuntary manslaughter occurs when a person "reck-

lessly causes the death of another." Sec. 565.024.1(1). The relevant mental state for involuntary manslaughter is acting "recklessly," which is to "consciously disregard[ ] a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Sec. 562.016.4. Acts beyond unintentional or accidental conduct can amount to reckless behavior. *State v. Beeler*, 12 S.W.3d 294, 297–98 (Mo. banc 2000). Intentional acts, such as the conscious use of a weapon, may be considered reckless when done with "conscious disregard of a risk of death to another and such disregard is a gross deviation from what a reasonable person would do in the circumstances." *Id.* at 299.

Here, Thomas testified that she did not intend to stab Jefferson, but instead jerked the knife at him to ward him off and protect herself from getting hit again. This evidence supports the conclusion that Thomas did not knowingly kill or injure Jefferson, but nevertheless intentionally jerked the knife at him in conscious disregard for the substantial and unjustifiable risk that death would result and in gross deviation from what a reasonable person would have done. Because this evidence permits an inference that Thomas did not intend to kill Jefferson and an inference that her use of the weapon was merely reckless, it would support an acquittal of second degree murder and a conviction of involuntary manslaughter. Accordingly, the trial court erred in refusing to submit the involuntary manslaughter instruction.

Reversed and remanded.

All concur.