STATE of Missouri, Respondent,

v.

Carlton Deon MASON, Appellant.

No. WD 68561.

Missouri Court of Appeals,
Western District.

Sept. 30, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2008.

Application for Transfer Denied
Jan. 27, 2009.

Ruth Sanders, Kansas City, MO, for appellant.

Shaun J. Mackelprang, Daniel N. McPherson, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, P.J., RONALD R. HOLLIGER and JOSEPH P. DANDURAND, JJ.

RONALD R. HOLLIGER, Judge.

Carlton Mason (hereinafter "Mason") appeals his convictions for murder in the second degree, armed criminal action, first degree arson, and first degree endangering the welfare of a child. He raises one issue about the use of a peremptory challenge by the state and also contends that the trial court erred by not giving an instruction on the lesser included offense of involuntary manslaughter.

Because Mason does not contest the sufficiency of the evidence but rather argues error in the failure to instruct on involuntary manslaughter, we must view the evidence in the light most favorable to Mason and that submission. *State v. Newberry*, 157 S.W.3d 387, 393 (Mo.App. S.D.2005). Viewed in this light, the circumstances of Lindsey Myers' death were as follows.

Mason and Myers had been arguing when Myers picked up a knife and began poking Mason in the chest with it. Mason reached up to grab Myers' wrist. Myers said "No, don't touch me" and then pulled back on the knife, cutting Mason's hand. Myers then put the knife down. Mason grabbed the knife and Myers turned away from him. Mason then stabbed her four times—twice in the back and once each in the neck and shoulder. The force of the blows was enough to bend the knife.

Mason testified that this all happened "very fast." When asked why he would do something like that he replied, "I was furious." After stabbing Myers, Mason looked down at her body and said, "Get up," apparently in disbelief that she was dead. He was "in a rage" and thought she would get up. He testified that he was not trying to take her life and had no plan to do so that day. He said he did not intend for her to die. When he realized Myers had died, Mason began cutting his wrists in a failed attempt at suicide. He then searched the house for a gun with which to

commit suicide. He stated that he "didn't want to go on after that incident." On cross examination, Mason stated that he "wasn't thinking" at the time of the stabbing. He found it difficult to believe he had stabbed Myers five times, as claimed by the state.

■ Before considering the instruction claim we first consider the *Batson* claim.[1] Mason contends that the explanation offered by the state for striking juror number 38 was pretextual and based on the venireperson's race. Before responding to this claim on the merits the state contends that Mason did not attempt to demonstrate the pretextual nature of the state's justification for the strike in a timely manner before the venire were excused. We agree.

The United States Constitution prohibits the state[2] from using a peremptory challenge to exclude a juror solely on the basis of his race. *Batson v. Kentucky,* 476 U.S. 79, 84–88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Missouri Supreme Court has set forth the procedure to be used for *Batson* challenges:

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venire persons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*State v. Marlowe,* 89 S.W.3d 464, 468 (Mo. banc 2002) (quoting *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992)).

As to the first step of the process, there is no dispute that defense counsel raised a timely *Batson* challenge and properly identified juror number 38 as an African American man. Moreover, Mason does not argue that the state's proffered reason for the strike—his failure to complete all of his jury questionnaire—was not race neutral. Therefore, only the third step is at issue, and the *Batson* challenge should have been sustained if Mason met his burden of showing the state's proffered reason was pretextual.

The state's proffered explanation was that "Number 38 did not fill out his questionnaire. All he put on there was his name and that he was a chef." Mason's counsel then pointed out that the state's assertion was not entirely correct because the venireperson had also indicated he had three children. The court then found "no indication ... that the strikes were made for anything other than neutral reasons which are appropriate for peremptory strikes." The objection was overruled. The state then noted there were no jurors situated similarly to number 38. The defense made no response.

After all strikes had been made the venire panel was seated (but not sworn because of the lateness of the day), and the remaining members of the venire panel, including juror number 38, were completely excused. After the seated jurors had been sent home for the night, Mason asked to "supplement" his record on the *Batson* challenge. Mason pointed out that a white venireperson had filled out even less of his questionnaire than number 38. Mason did

---

1. *Batson v. Kentucky,* 476 U.S. 79, 84–88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. Or the defendant. *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

not, however, ask the court to reconsider its previous ruling or to quash the panel and begin voir dire anew the next day.

The United States Supreme Court has not found that the question of timeliness of a *Batson* challenge is a constitutional question. Each state has thus been free to make its own evaluation. *Batson* is intended to protect two interests, the defendant and the potential juror, from discrimination in violation of the right of equal protection.

Timeliness should, therefore, at least consider the possible vindication of both of those interests by a proper and timely objection. Assuming that Mason made a satisfactory showing of pretext and, therefore, discriminatory intent by the state, his action came too late to benefit the discriminated against juror.

Missouri has addressed this issue in *State v. Parker*, 836 S.W.2d at 936. There, the court considered these disparate interests and how a timeliness rule could affect both the potential juror and defendant. The Court said:

> This Court reasons that the timeliness rule for *Batson* challenges should be devised so as to allow the trial court the opportunity to correct errors and avoid prejudice in the first instance, without unduly hampering the vindication of the equal protection rights *Batson* is meant to protect.

*Id.* at 936. The exact facts in *Parker* were different. The State argued and the court rejected the idea that the defendant's *Batson* challenges had to be made even before the defendant makes his own peremptory challenges. *Id.* The court stressed the importance of requiring the challenge to be made while the trial court still has time to correct the error by disallowing the offending strike. *Id.* Judicial time and resources are also a consideration where the entire panel would have to be quashed

and a new venire called. *Id.* The court specifically held that "it is the release of the unselected members of the venire and the problems and difficulties created thereby which truly govern the timeliness of a *Batson* motion." *Id.* at 937 (quotation marks omitted).

We believe the same principles considered in *Parker* should govern here, even if the procedural posture is different. Although the defendant's rights could still be vindicated at the point Mason offered his allegedly pretextual reason by the state, the excluded juror's could not. The defendant is entirely in control of whether and when a *Batson* challenge is made. To allow it to be perfected after the venire panel is released would permit abuse by the defendant and inefficiency in the judicial system.

We hold, therefore, that Mason's offer to show the state's explanation for its preemptory challenge was pretextual came too late, and he thus waived his challenge.

■ Mason next challenges the trial court's refusal to give an involuntary manslaughter instruction. The refused instruction would have required the jury to consider whether Mason recklessly caused the death of Lyndsey Myers, in contrast to the given instructions for second degree murder and voluntary manslaughter, which required a finding that Mason acted "knowingly." It defined "recklessly" as follows: "[A] person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances." The murder in the second degree and voluntary manslaughter instructions required the jury to find that Mason knew or was aware that his conduct was practically cer-

tain to cause the death of Lyndsey Myers. The instruction on murder in the second degree also required a finding that Mason did not cause Myers' death under the influence of sudden passion arising from adequate cause.

■■■ "We review the circuit court rulings for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Lewis*, 243 S.W.3d 523, 524 (Mo.App. W.D.2008) (quotation marks omitted). Where the trial court declines to instruct on a lesser included offense, the instruction must be given if supported by the evidence or any logical inferences derived from that evidence. *State v. Battle*, 32 S.W.3d 193, 196 (Mo.App. E.D.2000). A request for an instruction should be denied only if no rational juror could reasonably conclude that the defendant is guilty of the lesser offense and not the greater offense. *Newberry*, 157 S.W.3d at 395, 397. Involuntary manslaughter in the first degree is a lesser-included offense of murder in the first degree and murder in the second degree. Section 565.025.2, RSMo 2000.

> A court is not obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. Doubt as to whether to instruct on the included offense is to be resolved in favor of instructing on the included offense.

*State v. Yacub*, 976 S.W.2d 452, 453 (Mo. banc 1998) (internal citation omitted).

The Missouri Supreme Court discussed the line between recklessness and knowledge in *State v. Beeler*: "Recklessness resembles knowing conduct in one respect in that it involves awareness, but it is an awareness of risk, that is, of a probability less than a substantial certainty. By contrast, to act knowingly is to be aware that the conduct is practically certain to cause a result." 12 S.W.3d 294, 299 (Mo. banc 2000).

Mason's disclaimer of any intent to kill the victim does not, in itself, require an instruction on involuntary manslaughter.[3] Mason's own testimony indicated that he intended to stab the victim and that he was aware that he was stabbing her in the back after she turned away from him. He stabbed her twice in the back and once each in the neck and shoulder. The force of these blows bent the knife and severely injured several internal organs. These facts would not support an instruction for involuntary manslaughter.

The Southern District has addressed several cases in which the defendant alleged error in the trial court's refusal to instruct on involuntary manslaughter. In *State v. Hamlett*, the defendant kicked the victim in the throat and then hit him several times in the head, resulting in death. 756 S.W.2d 197, 200 (Mo.App. S.D.1988). The court found it "obvious" that Hamlett's conduct was not reckless, but intentional, and affirmed the conviction. *Id.* at 201.

In *State v. Deckard*, the defendant walked into a restaurant with a shotgun, threatened the victim, and, after the victim finished a phone call, shot him in the head. 18 S.W.3d 495, 503 (Mo.App. S.D.2000). The court determined that no rational factfinder could have concluded that Deckard did not act knowingly. *Id.* at 504. The court found Deckard's contention that he did not know the gun was loaded to be "spurious," because Deckard had threat-

---

3. Involuntary manslaughter may, in fact, apply to an intentional act where self defense is in issue. *Beeler*, 12 S.W.3d at 299.

ened the victim the day before the killing and "test fired" the gun the day of the shooting. *Id.* at 503.

Finally, in *State v. Newberry*, the defendant hit the victim in the head with a hammer with sufficient force to crack his skull around its entire circumference and push fragments of bone into the brain. 157 S.W.3d 387, 396 (Mo.App. S.D.2005). Again, the court found that no rational juror could reasonably conclude that the defendant did not act knowingly. *Id.* at 397.

Mason relies upon *State v. Thomas*, 161 S.W.3d 377 (Mo. banc 2005). In *Thomas*, the defendant testified that she did not intend to stab the victim, but she jerked the knife at him in an attempt to ward him off and protect herself. *Id.* at 379. The court found this evidence was enough to require an involuntary manslaughter instruction, despite the admittedly intentional stabbing. *Id.* at 381.

Mason denied an intent to kill but his own testimony is inconsistent with a conclusion that he recklessly stabbed Myers. Mason testified, "I stepped back. She had put the knife down. I reached up and grabbed the knife. She turned away from me and I came across like that toward her back (indicating)." No rational juror could have concluded that Mason did not act knowingly. The trial court therefore did not err by refusing the involuntary manslaughter instruction.

### Conclusion

The judgment is affirmed.

JOSEPH M. ELLIS, Presiding Judge, and JOSEPH P. DANDURAND, Judge, concur.