**STATE of Missouri, Respondent,**

v.

**Johnnie PULLEY, Appellant.**

**No. ED 95265.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 4, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 22, 2011.

Application for Transfer
Denied Jan. 31, 2012.

Maleaner Harvey, Office of the Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Chief Judge.

### Introduction

Appellant Johnnie Pulley (Pulley) was convicted by a jury of second-degree murder for fatally shooting Brandon Coleburg (Coleburg). In this appeal, Pulley alleges that insufficient evidence exists to support his conviction and that the trial court erred in refusing to submit Appellant's proposed instructions regarding involuntary manslaughter and character evidence. Finding no error, we affirm.

### Factual and Procedural History

The evidence viewed in the light most favorable to the verdict is as follows. On April 29, 2009, Pulley boarded a bus and took a seat next to a young man who Pulley claims was Coleburg. Pulley alleges that, for reasons unknown, Coleburg

assaulted him causing Pulley injuries including a black eye, bruised face, and contusions to his head. Pulley filed a police report following the incident.

Several months later, on July 1, 2009, Pulley again boarded the bus and recognized Coleburg as the man who he believed had assaulted him in April 2009. Pulley followed Coleburg as Coleburg got off the bus. Pulley followed Coleburg as he boarded a second bus. Pulley dialed 911 and informed the dispatcher that he was following the individual who had previously assaulted him. As Coleburg exited the second bus, Pulley followed.

Upon following Coleburg off the second bus, Pulley confronted Coleburg and told him that he had called the police. The events occurring immediately thereafter are unclear. However, multiple witnesses testified that they observed Pulley talking in a raised voice while Coleburg stood with his hands by his sides, and that Pulley pulled a handgun from near his waistband and shot Coleburg. Pulley testified that he approached Coleburg and Coleburg "put up his guard" in an aggressive manner. Pulley testified that, in response to Coleburg's aggressive act, he pulled up his shirt to display the gun. Pulley further testified that "[Coleburg] came at me and I stepped back one step to the right and fired one shot" from a distance of four to five feet. Coleburg died from a single gunshot wound to the abdomen.

Pulley was arrested and tried before a jury on charges of second-degree murder and armed criminal action. At the close of all the evidence, Pulley moved for a judgment of acquittal, which the trial court denied. During the jury instruction conference, Pulley requested that the trial court submit an instruction for involuntary manslaughter and an instruction related to character evidence. The trial court denied Pulley's request for an involuntary man-

slaughter instruction because it found no evidence was presented from which a jury could reasonably conclude that Pulley acted recklessly when he shot Coleburg. Because Pulley's proposed character evidence instruction referenced the charge of involuntary manslaughter, the trial court refused the character evidence instruction, but submitted a revised instruction omitting the reference to the charge of involuntary manslaughter. The jury convicted Pulley of second-degree murder and acquitted him on the charge of armed criminal action. The court suspended the execution of a ten-year sentence and placed Pulley on probation for a period of five years. This appeal follows.

## Points on Appeal

Pulley raises three points on appeal. First, Pulley argues that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because there was insufficient evidence from which a reasonable jury could find that he had the requisite mens rea to sustain a conviction for second degree murder. Second, Pulley contends that the trial court erred in refusing to submit a jury instruction for the lesser included offense of first-degree involuntary manslaughter because there was sufficient evidence from which a reasonable jury could have concluded that he recklessly caused Coleburg's death. Third, Pulley asserts that the trial court erred in failing to submit his proposed character evidence jury instruction.

## Discussion

I. *Pulley's conviction for second-degree murder is supported by sufficient evidence.*

■ In his first point on appeal, Pulley argues that the verdict lacks sufficient evidence that he shot Coleburg for the pur-

pose of killing him or causing serious physical injury. In examining the sufficiency of evidence, we are limited to a determination of whether there is sufficient evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court may not act as a "super juror" with veto power. *Chaney,* 967 S.W.2d at 52. Rather, the reviewing court gives great deference to the trier of fact and accepts as true all of the evidence favorable to the State, including favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *Id.*

We will affirm the trial court's judgment if, upon viewing the evidence and inferences in favor of the verdict, there is sufficient evidence from which a reasonable jury could have found Pulley guilty on each element of the charge beyond a reasonable doubt. *Id.* A person commits second-degree murder under Section 565.021.1(1), RSMo Cum.Supp.2009,[1] if he or she "[k]nowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person[.]" Section 565.021.1(1). A person is presumed to "intend[ ] the natural and probable consequences of his acts." *State v. Manley,* 223 S.W.3d 887, 891 (Mo.App. W.D.2007), *quoting State v. O'Brien,* 857 S.W.2d 212, 218 (Mo. banc 1993). The natural consequence of firing a handgun toward the victim "is, at the very least, great bodily harm." *Manley,* 223 S.W.3d at 891 (internal quotations omitted). Moreover, "[a] killing by the use of a deadly weapon on a vital part of the victim's body is sufficient to permit a finding of

intent to kill." *State v. Craig,* 33 S.W.3d 597, 600 (Mo.App. E.D.2000).

Viewed in the light most favorable to the verdict, Pulley's own testimony provides sufficient evidence from which a reasonable jury could have concluded that he intended to cause Coleburg serious physical injury. Pulley testified that he fired in self-defense because "when [Coleburg] started toward me it was a life-and-death situation and whoever ended up with [Pulley's handgun] was going to be the victor and I did not want to wait, I did not relinquish my weapon." Pulley testified that he shot Coleburg at the "center of mass" because it was the easiest target. Pulley acknowledged that he was aware that shooting Coleburg "[d]efinitely would disable" him and would cause "serious trouble." This testimony provides sufficient evidence from which a reasonably jury could find that Pulley had the requisite mens rea to convict him for second-degree murder.

Even if Pulley's own testimony did not sufficiently articulate a subjective intent to kill or cause serious physical injury to Coleburg, Pulley's argument requires this Court to hold that intentionally firing a gun into a person's abdomen from four to five feet away is insufficient, as a matter of law, to support a finding of the shooter's intent to kill or cause serious bodily injury. We reject Pulley's argument.

Having found sufficient evidence exists that Pulley acted with the intent to kill or cause serious bodily injury, we must now consider whether the evidence of self-defense negated this mens rea. In Missouri, self-defense is a special negative defense. Although the defendant carries the burden of injecting the issue of self-defense, the State has the affirmative burden

1. All statutory references are to RSMo Cum. Supp.2009 unless otherwise indicated.

of proving beyond a reasonable doubt that the defendant did not act in self-defense. Section 563.031.5. Here, the trial court properly instructed the jury that they must find Pulley's use of force lawful if they find that Pulley: (1) was not an initial aggressor, (2) reasonably believed that the force he used was necessary to defend against what he believed was the imminent use of unlawful force, and (3) Pulley reasonably believed that the use of deadly force was necessary to protect himself from death or serious physical injury. *See* Section 563.031.1. The trial court also correctly instructed the jury that the State had the burden of proving beyond a reasonable doubt that Pulley had not acted in lawful self-defense. *See* Section 563.031.5. Therefore, we must determine whether the State produced evidence from which a reasonable jury could have found beyond a reasonable doubt that Pulley did not act in self-defense. We find that the State carried its burden.

The State produced sufficient evidence from which a reasonably jury could have found beyond a reasonable doubt that Pulley did not act in self-defense. Viewed in the light most favorable to the verdict, the State produced evidence that Pulley initiated the confrontation and shot Coleburg in the chest in retribution for the earlier assault, not in self-defense. Pulley followed Coleburg as he transferred between buses, all the while loudly announcing to the 911 dispatcher and the other bus riders that Coleburg was a criminal, and that "I'm not going to let him get away." Pulley followed Coleburg off the last bus, walked alongside him talking in a loud voice and brandished a handgun at Coleburg. The record before us includes testimony that Coleburg reacted to Pulley's actions by standing with his hands by his sides, making no aggressive act toward Pulley. The record also includes testimony that, even though Coleburg made no aggressive act toward Pulley, Pulley shot Coleburg in the abdomen. Testimony that Pulley followed and threatened Coleburg and that Pulley shot Coleburg without immediate provocation is sufficient for a reasonably jury to find that Pulley was the initial aggressor, or that Pulley did not reasonably believe deadly force was necessary to prevent the imminent threat of unlawful deadly force.

We acknowledge that Pulley's testimony provides a basis for the jury to consider his claim of self-defense. However, the trier of fact rejected Pulley's testimony and claim, as it was free to do. Our review of the record finds sufficient evidence from which a jury could reasonably find that Pulley did not act in self-defense. Notably, the undisputed evidence shows that Pulley shot Coleburg at close range, and Pulley knew by doing so he would cause Coleburg "serious trouble." We defer to the credibility findings of the jury and will not review the jury's factual findings relating to Pulley's claim of self defense. Because the record contains sufficient evidence that Pulley intended to shoot Coleburg and that Pulley knew his actions would cause serious physical injury to Coleburg, we hold the jury's verdict is supported by sufficient evidence. Point denied.

II. *The trial court did not err in refusing to submit the lesser included offense of first-degree involuntary manslaughter.*

■ In his second point on appeal, Pulley contends that the trial court erred in failing to instruct the jury on the lesser included offense of first-degree involuntary manslaughter. Second degree murder occurs if the defendant knowingly causes the death of a person, or causes a person's death when acting with the intent to cause serious physical injury. Section

565.021.1(1). In contrast, a defendant commits first-degree involuntary manslaughter if he or she recklessly causes the death of another person by consciously disregarding a substantial and unjustified risk, and that acting with such disregard constitutes a gross deviation from the standard of care a reasonable person would have exercised. Section 565.024.1(1); Section 562.016.4.

In determining whether a refusal to submit an instruction was error, "the evidence is viewed in the light most favorable to the defendant." *State v. Avery*, 120 S.W.3d 196, 200 (Mo.2003), citing *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Id*. Instruction on a lesser-included offense is required if the evidence produced at trial, by fact or inference, provides a basis both for the acquittal of the greater offense and the conviction of the lesser offense. Sec. 556.046.2; *State v. Avery*, 120 S.W.3d at 205.

Pulley contends that sufficient evidence exists from which a reasonable jury could have found that he acted recklessly in shooting Coleburg. In particular, Pulley argues that the jury, although rejecting his claim of self defense, could have reasonably concluded from the evidence that his shooting of Coleburg was nonetheless reckless conduct lacking the requisite intent to kill or cause serious physical injury, but instead evidencing a conscious disregard of a substantial risk of harm to Coleburg. Pulley cites *State v. Beeler*, 12 S.W.3d 294 (Mo. banc 2000), for the proposition that the trial court may submit a jury instruction for involuntary manslaughter even if the defendant committed an intentional act that resulted in the victim's death. The State contends that Pulley's reliance on *Beeler* is misguided, and

that the holding in *Beeler* is limited to cases of "imperfect self defense" where the defendant is entitled to use force to act in self-defense, but exceeds the scope of the self-defense privilege by using an unreasonable amount of force. While we disagree with the State's argument that *Beeler* applies only to self-defense cases involving an alleged "unreasonable use of force," we agree that *Beeler* does not support Pulley's claim of instructional error.

In *State v. Beeler*, the Missouri Supreme Court held that an intentional act of self-defense may constitute reckless conduct if the force used was unreasonable. *State v. Beeler*, 12 S.W.3d 294, 298 (Mo. banc 2000). The *Beeler* Court explained that the statute does not define the term "reckless" as an act done unintentionally, or even as the performance of an intentional act having an unintended result. *Id*. at 297. Rather, the Court explained that the distinction between knowing conduct and reckless action lies in the actor's awareness of the potential risk. *Id*. at 299. Although knowing conduct necessarily involves awareness that the conduct is practically certain to cause the result, recklessness involves an awareness of risk that is of a probability less than a substantial certainty. *Id*. at 297. Accordingly, the Court held that, "[t]he argument that only evidence of an accidental act or an accidental result supports involuntary manslaughter is incorrect." *Id*. In rejecting the argument that involuntary manslaughter involved only "accidental" conduct, *Beeler* expressly held that the conscious discharge of a firearm could fall within the definition of "reckless" where the weapon was fired with disregard for a substantial and unjustifiable risk that death will result, and if the conscious firing of the weapon was a gross deviation from what a reasonable person would do to protect himself. *Id*.

In *State v. Thomas*, the Missouri Supreme Court clarified the distinction articulated in *Beeler* between a "knowing act" and a "conscious reckless act" within the context of self-defense. *State v. Thomas*, 161 S.W.3d 377, 381 (Mo. banc 2005). In that case, Thomas was convicted of second-degree murder for the stabbing death of her boyfriend. *Id.* at 378. On appeal, Thomas argued that the trial court erred in failing to submit an involuntary manslaughter instruction because there was sufficient evidence she acted recklessly. The evidence, viewed most favorable to the inclusion of the involuntary manslaughter instruction showed that, while Thomas was physically assaulted by her boyfriend, she closed her eyes and thrust a knife toward him in an attempt to ward him off, but not with the intent to actually stab him. *Id.* at 381. The Court explained that, under *Beeler*, these facts supported an inference that Thomas did not act with the intent to kill or cause her boyfriend serious bodily injury. However, her conduct in intentionally thrusting a knife toward her boyfriend demonstrated a conscious disregard for a substantial and unjustified risk that death would result, and was a gross deviation from what a reasonable person would have done. *Id.* The Court held that this evidence was sufficient to find that Thomas had acted recklessly, even though she consciously had acted in self-defense. *Id.*

We acknowledge that, under *Beeler*, the fact that Pulley intentionally shot Coleburg, does not, as a matter of law, foreclose the possibility that he could be acquitted of second-degree murder, and found guilty of involuntary manslaughter. But, like the Court in *Beeler*, our analysis does not end here. Pulley's request for an involuntary manslaughter instruction is framed within the limited context of self-defense. However, our analysis is necessarily based upon the broader judicial interpretation of term "reckless." That the jury did not find Pulley acted in self-defense is not dispositive as to whether the trial court erred when it refused to submit the involuntary manslaughter instruction requested by Pulley. Before instructing on involuntary manslaughter, the trial court needed to have before it evidence and inferences derived therefrom, which when viewed in the light most favorable to the defendant, supported a finding that Pulley acted recklessly, and not with the intent to kill or cause serious bodily injury. Importantly, the trial court could have instructed the jury on involuntary manslaughter only if sufficient evidence existed for the jury to acquit Pulley on the greater charge of murder, but convict him on the lesser included offense of manslaughter. Section 556.046.2. As noted in *Beeler*, although an acquittal on a charge of second degree murder and conviction of involuntary manslaughter are not necessarily logically inconsistent, "that does not foreclose the court's duty to determine if the giving of the [involuntary manslaughter] instruction in the context of the facts of [a] case [is] proper." *Beeler*, 12 S.W.3d at 300.

Pertinent to our review is whether the evidence presented at trial, when viewed in the light most favorable to Pulley, reasonably could support a finding that Pulley acted recklessly when he shot Coleburg. A finding of recklessness could provide a basis for both acquitting Pulley of second degree murder and convicting him of involuntary manslaughter. We apply the definition of reckless as used by the Supreme Court in *Beeler* and *Thomas* and consider whether the evidence supported a finding that Pulley consciously discharged a firearm with disregard for a substantial and unjustifiable risk that death would result to Coleburg, and whether Pulley's conduct constituted a gross deviation from what a reasonable person would do to protect himself. Having thoroughly reviewed the

record, we are not persuaded that there was sufficient evidence before the trial court to support a finding of recklessness that would have permitted the trial court to instruct the jury on involuntary manslaughter.

Pulley testified that he believed he was in a life-and-death struggle with Coleburg because Coleburg was attempting to take Pulley's gun away from him. Pulley testified that he shot at Coleburg's center mass because that was the easiest part of the body to target. Pulley also testified he knew that if he shot Coleburg in his center mass it would "[d]efinitely disable" Coleburg and would cause "serious trouble." Within this factual context, Pulley argued at trial that he acted with the intent to kill or cause serious bodily injury, but that this action was lawful self-defense. The State argued that Pulley shot Coleburg in retribution for the assault Coleburg allegedly perpetrated against Pulley several months earlier. Even if the jury found that Pulley was entitled to act in self-defense, that finding would not alter that fact that Pulley shot Coleburg with the intent to kill or cause serious bodily injury. A finding of self defense would simply have made the intentional shooting lawful. Neither *Beeler* nor *Thomas* converts an act taken with the intent to kill or cause serious bodily injury into a reckless act simply because the underlying act was committed under a claim of self-defense. Rather, the trial court had to have evidence from which it could reasonably be inferred that Pulley was not substantially certain that his act of shooting Coleburg would cause serious bodily injury or death, as did the defendant in *Thomas*.

The record before us demonstrates that, regardless of the jury's findings on Pulley's claim of self-defense, the only evidence presented at trial was that Pulley acted for the purpose of causing death of serious bodily injury. The record includes evidence to support inferences that either Pulley acted justifiably in self-defense, or that he shot Coleburg in retribution. Evidence of reckless behavior is notably absent from the record. This case is distinguished from *Thomas*, because there the defendant intentionally committed a dangerous act that foreseeably, but inadvertently, caused the death of the victim. To the contrary, the evidence of this case is that Pulley intentionally fired a handgun into Coleburg's abdomen from several feet away with the intention of killing him or causing serious bodily injury. Pulley committed an intentional act and achieved the intended result of that act. The evidence supports only a finding that Pulley was substantially certain that his act would cause death of serious bodily injury when he shot Coleburg.

Pulley intentionally shot Coleburg with the intent to kill or cause him serious bodily injury either without cause, or in self-defense. While Pulley's testimony provided him with a basis for the jury's acquittal on a charge of second degree murder, the evidence does not provide a basis for a conviction on the lesser included charge of involuntary manslaughter because the evidence does not support a finding that Pulley acted recklessly. Accordingly, the trial court did not err in refusing to submit an instruction for first-degree involuntary manslaughter. Point denied.

III. *The trial court did not err in failing to submit Pulley's proposed jury instruction regarding the use of character evidence.*

██ In his final point on appeal, Pulley alleges that the trial court erred in declining to submit his proposed Instruction Y, which would have instructed the jury re-

garding the use of character evidence. Pulley's final point is wholly without merit.

We review a trial court's refusal to submit a proposed jury instruction for an abuse of discretion. *State v. Leisure*, 810 S.W.2d 560, 574 (Mo.App. E.D.1991). However, we review allegations of error that are not preserved for appeal as plain error to determine whether the trial court committed an error that resulted in manifest injustice or a miscarriage of justice. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010).

Here, Pulley failed to preserve this point for appeal. At the jury instruction conference, Pulley did not object to the trial court's failure to offer the character evidence instruction, but requested that the instruction be paired with Pulley's verdict director, which included the charge of involuntary manslaughter. As described *supra*, the trial court correctly denied the submission of an instruction on involuntary manslaughter, and appropriately rejected Pulley's request to submit a character evidence instruction that referenced a charge not before the jury.

Because Pulley failed to preserve the issue for appeal, we review only for plain error. As such, we will affirm the judgment unless we find the trial court's error resulted in manifest injustice or a miscarriage of justice. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). Instructional error does not constitute plain error unless the movant demonstrates that the trial court misdirected or failed to instruct the jury to such an extent that the error affected the jury's verdict. *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (internal citations omitted).

Pulley fails to meet this standard for a most basic reason: the trial court submitted the substance of the character evidence instruction Pulley requested in a different jury instruction. We note that Instruction 8, which was submitted to the jury, is exactly the same as Instruction Y requested by Pulley, except that Instruction 8 deletes the reference to involuntary manslaughter that was included Instruction Y. Because the substance of Pulley's requested instruction on character evidence was submitted to the jury, we find no error, let alone plain error.

That Pulley raises this point on appeal when the substance of the character evidence instruction of which Pulley now complains was in fact submitted to the jury constitutes an abuse of our judicial process and a waste of judicial resources. While we recognize the right of parties to seek redress of alleged wrongdoings through the appellate process, we will not overlook or fail to admonish parties and counsel who abuse the freedoms provided by law. Pulley has wasted this Court's time and resources, as well as those of the State in raising a thoroughly baseless point on appeal. Point denied.

*Conclusion*

We hold that Pulley's conviction for second-degree murder is supported by sufficient evidence. We further hold that the trial court did not err in refusing to instruct the jury on involuntary manslaughter, nor in failing to offer Pulley's proposed Instruction Y. Secondly, we affirm the judgment of the trial court.

GLENN A. NORTON and BEN BURKEMPER, SP. J., Concur.