

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76452 |
| | ) | |
| CHRISTOPHER M. SANDERS, | ) | Opinion filed: February 3, 2015 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### The Honorable Edith Messina, Judge

Before Division One: Joseph M. Ellis, Presiding, Judge,
Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Christopher Sanders appeals from his conviction in the Circuit Court of Jackson County of one count of murder in the second degree, § 565.021.[1] For the following reasons, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.[2]

On December 7, 2011, a maintenance worker discovered the decomposing body of Sherilyn Hill hidden under the basement stairs of the Royale Inn motel in Kansas

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

[2] This Court previously issued an order and unpublished memorandum affirming Appellant's conviction. Transfer was granted by the Missouri Supreme Court, which then retransferred the cause to this Court for reconsideration in light of *State v. Jackson*, 433 S.W.3d 390 (Mo. banc 2014), and *State v. Pierce*, 433 S.W.3d 424 (Mo. banc 2014). This court has, on its own motion, withdrawn its prior order and granted rehearing.

City, Missouri.  A sheet and towel were wrapped around Hill's neck and the lower part of her face.  A medical examiner subsequently determined that she had died as a result of blunt force trauma to the head and strangulation.

In the course of their investigation, the police eventually discovered witnesses and evidence that Appellant had rented a room at the Royale Inn on November 22, 2011, that he had shared with Hill and Zonia Brown.  When questioned, Brown told the police that she and Hill had agreed to have sex with Appellant in exchange for crack cocaine.  She stated that, after Appellant only provided them with a very small amount of crack, Hill on three occasions took out a knife, pointed it at Appellant, and told him he needed to get them some more crack.  Brown said that, after the third time, Hill left her knife on the sink in the bathroom.  Brown told police that, soon thereafter, Appellant looked at her and said, "You ready?" and then spun around and kicked Hill, knocking her down.  She said he then repeatedly kicked her over ten times in the head until she was just lying lifelessly on the floor.  Brown stated that, when Appellant took a sheet from the bed and started to wrap it around Hill's head, she ran out of the room and fled from the hotel.

Appellant was arrested.  When questioned, Appellant denied that any type of altercation had occurred in the motel room on November 22.  Following a search of Appellant's house, DNA testing established the presence of Hill's blood on a pair of Appellant's boots.  Appellant was eventually charged by indictment with murder in the second degree for knowingly causing the death of Hill "by kicking her and strangulating her."

At trial, Brown testified consistently with what she had told the police. In contrast, Appellant testified that, in the motel room on November 22, after Hill and Brown had smoked $50 worth of crack without having sex with him, Hill had pulled out a knife and demanded that Appellant get some more crack. When he said no, she put the knife back in her pocket. Appellant stated that ten minutes later she pulled out the knife and stuck it in his face, demanding he get more crack. He said that he was apprehensive but that Hill put the knife away after he told her they were almost done there and that she and Brown could just leave. Appellant testified that, shortly thereafter, when his back was turned, Hill came up behind him and held her knife to his throat, cutting him, and said, "Pussy, I'll just take your sh*t." He said she then took the wallet from his pocket and tossed it to Brown, telling her to get his money. Appellant stated that, when Hill did this, he was able to grab her arm, turn, and hit her in the head. Appellant claimed that Hill then started swinging wildly at him with the knife and that he thought he was going to get stabbed. He said he elbowed Hill in the head as hard as he could, and she staggered back. He stated that, when she kept swinging the knife, he kicked her in the chest, ran to her, and "bust her in the mouth," causing her to fall backward and hit her head on the sink. He said this caused her to drop the knife but that she immediately started to crawl over and reach for it. Appellant said he tried to kick the knife away from her but accidentally kicked her in the face instead, causing her to flip over and strike her head against the wall. He stated that, at that point, Hill was knocked out.

Appellant testified that Brown then fled from the room with his money. He stated that he never removed any bedding from the bed or wrapped Hill up in any way. He said that he merely carried her out of the room, placed her on the stairway landing, and

3

told the motel manager that there was a woman passed out on the stairway. Appellant testified that he then went looking for Hill's pimp, Montay, and for Brown in an effort to try to get his stolen money back. He said that, when he later returned to his room, Hill was no longer on the stairwell and he had assumed she had gotten up and left.

At the end of the trial, the jury was given verdict directors on murder in the second degree and the lesser-included offense of voluntary manslaughter. A self-defense instruction was also given. The trial court refused, however, to submit Appellant's proposed instruction on involuntary manslaughter.

The jury eventually returned its verdict finding Appellant guilty of second-degree murder. The trial court sentenced Appellant to a term of life imprisonment in accordance with the jury's recommendation.

In his sole point on appeal, Appellant claims that the trial court committed reversible error by refusing to instruct the jury on the lesser-included offense of involuntary manslaughter. He argues that the jury could have determined that he recklessly, rather than knowingly, caused the death of Hill or that he acted in self-defense but recklessly used a degree of force that was a gross deviation from what a reasonable person would have used to protect himself.[3]

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction under [§] 556.046." **State v. Jackson**, 433 S.W.3d 390, 395 (Mo. banc 2014). Pursuant to § 556.046, a trial court is obligated to submit an instruction on a lesser-included offense when (1) "a party timely requests the instruction," (2) "there is a basis in the evidence for acquitting the defendant of the charged offense," and (3) "there

---

[3] "'[R]eckless conduct is not inconsistent with the intentional act of defending one's self, if in doing so one uses unreasonable force.'" **State v. Frost**, 49 S.W.3d 212, 217 (Mo. App. W.D. 2001) (quoting **State v. Beeler**, 12 S.W.3d 294, 299 (Mo. banc 2000)).

4

is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested." *Id*. at 396. "[I]f the statutory requirements for giving such an instruction are met, a failure to give a requested instruction is reversible error."[4] *Id*. at 395. "Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide." *Id*. at 399 (internal quotation omitted).

The State concedes that Appellant timely requested the instruction and that there was a basis for the jury to acquit Appellant of murder in the second degree.[5] It argues, however, that there was no basis in the evidence for convicting Appellant of the lesser-included offense of involuntary manslaughter.[6]

We must begin our inquiry by determining whether involuntary manslaughter is a "nested" lesser-included offense to murder in the second degree. "When dealing with 'nested' lesser included offenses (i.e., those comprised of a subset of the elements of the charged offense), it is ***impossible to commit*** the greater without ***necessarily committing*** the lesser." *Id*. at 404 (emphasis in original). "Any evidence that is sufficient to prove the elements of the charged offense must necessarily be sufficient to prove a crime that is comprised of a subset of those same elements, i.e., a 'nested' lesser offense." *Id*. at 405. "[A] defendant not only does not need to introduce affirmative evidence, he does not have to 'cast doubt' over the state's evidence via cross-examination or explain to the judge or jury precisely how or why the jury can

---

[4] "[P]rejudice is presumed when a trial court fails to give a requested lesser included offense instruction that is supported by the evidence." *Jackson*, 433 S.W.3d at 395 n.4.

[5] "[O]nce the defendant pleads not guilty, there will always be a basis in the evidence to acquit the defendant at trial because the jury – and only the jury – is the final arbiter of what that evidence does and does not prove." *State v. Pierce*, 433 S.W.3d 424, 433 (Mo. banc 2014).

[6] "Involuntary manslaughter is a lesser-included offense of second degree murder." *State v. Thomas*, 161 S.W.3d 377, 380 (Mo. banc 2005).

5

disbelieve that evidence and so acquit him of the greater offense and convict him of the lesser." *Id*. at 401-02. Accordingly, "[w]hen a defendant requests an instruction for a lesser included offense that consists of a subset of the elements of the charged offense, that instruction must be given."[7] *Id*. at 404.[8]

"A person commits murder in the second degree if he or she 'knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person.'" *State v. Thomas*, 161 S.W.3d 377, 380 (Mo. banc 2005) (quoting *§ 565.021.1(1)*). "In contrast, a defendant commits first-degree involuntary manslaughter if he or she recklessly causes the death of another person by consciously disregarding a substantial and unjustified risk, and that acting with such disregard constitutes a gross deviation from the standard of care a reasonable person would have exercised." *State v. Pulley*, 356 S.W.3d 187, 192 (Mo. App. E.D. 2011) (citing *§§ 565.024.1(1)* & *562.016.4*).

"A person 'acts knowingly' 'with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.'" *State v. Roberts*, 2014 Mo. App. LEXIS 1299 at *7-8 (Mo. App. W.D. 2014) (quoting *§ 562.016.3(2)*). "Acting 'purposely' occurs when it is a person's 'conscious object to engage in that conduct or to cause that result.'" *Thomas*, 161 S.W.3d at 380 (quoting *§ 562.016.2*). "A person 'acts recklessly' 'when he consciously disregards a substantial and

---

[7] If the trial court refuses to give the requested instruction, the "court commits error under section 556.046 . . . because (1) if the evidence is sufficient to convict the defendant of the charged offense, there is always a basis in the evidence to convict the defendant of a 'nested' lesser offense; and (2) if the only difference between the charged offense and the 'nested' lesser offense is an element on which the state bears the burden of proof, there is always a basis in the evidence to acquit the defendant of the charged offense because the jury is free to disbelieve all or any part of the evidence concerning that differential element." *State v. Pierce*, 433 S.W.3d 424, 430 (Mo. banc 2014).
[8] In *Jackson*, the Missouri Supreme Court recognized that "the effect of this decision likely will be that lesser included offense instructions will be given virtually every time they are requested." *Jackson*, 433 S.W.3d at 402.

6

unjustifiable risk . . . that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.'" **Roberts**, 2014 Mo. App. LEXIS 1299 at *8 (quoting **§ 562.016.4**).

"Although 'knowingly' and 'recklessly' are different mental states, Section 562.021.4 RSMo 2000, provides that each culpable mental state is included in higher mental states." **Id**. at *14. "Section 562.021.4 states, in pertinent part, 'When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly.'" **Id**. "Subsection 4 makes it clear that the culpable mental states are 'graded', that is, each mental state is included in the higher mental states. This is useful in grading offenses (making it possible to convict for lesser included offenses) and also avoids the argument that something was not done recklessly because it was done knowingly or purposely." **Id**. (internal quotation omitted). "Thus, while 'recklessly' and 'knowingly' are differently-defined mental states, Section 562.021.4 expressly provides that 'knowingly' encompasses 'recklessly.'" **Id**.

"Stated another way, where the evidence is sufficient to prove that the defendant was aware that his conduct was practically certain to cause a particular result ('knowingly caused'), there is no need for additional proof that the defendant consciously disregarded a substantial and unjustifiable risk that a result would follow and that such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situations ('recklessly caused')."[9] **Id**. at *14-15.

---

[9] In **State v. Randle**, No. ED 99137, 2014 Mo. App. LEXIS 1117 at *8 (Mo. App. E.D. Oct. 7, 2014), the Eastern District of this Court reached the opposite conclusion, holding that the "differential element" referred to in *Jackson* for establishing that a lesser-included offense is "nested" "does not refer to the different mental intent element that may exist between a greater offense and a lesser-included offense, such as 'knowingly' committed an act versus 'recklessly' committed an act." The court held that where the difference between the greater and the lesser charge is a different mental element, "there needs to be some affirmative evidence to convict on the lesser-included charge in order to mandate an instruction on

7

"Under Section 562.021.4, evidence establishing that the defendant 'knowingly' caused a result *automatically* establishes that the defendant 'recklessly' caused that result." ***Id***. at *15.

Accordingly, involuntary manslaughter is a "nested" lesser-included offense to second degree murder, as it is comprised of a subset of the elements of second-degree murder. Because there was sufficient evidence to prove the elements of second-degree murder, there was, necessarily, sufficient evidence to prove the elements of the nested lesser-included offense of involuntary manslaughter.[10] ***Jackson***, 433 S.W.3d at 405.

Beyond its claim that the evidence was insufficient to establish that Appellant acted recklessly, the State contends that there was insufficient evidence to support the submission of the requested instruction, which asked whether Appellant had recklessly caused the victim's death by kicking her, because the medical examiner that conducted the autopsy testified that Hill had died as a result of both blunt force trauma and strangulation and offered no testimony indicating that the blunt force injuries alone might have caused the victim's death. The State also notes evidence showing ligature marks, bruising, and cartilage damage to the neck. The Missouri Supreme Court has made abundantly clear, however, that the jury is free to believe all, part, or none of the medical examiner's testimony. ***Id***. at 398. "A jury may accept part of a witness's testimony, but disbelieve other parts." ***Id***. (internal quotation and emphasis omitted). Accordingly, the jury is not required to accept as credible the medical examiner's

---

that lesser-included charge." ***Id***. at *9. In ***State v. Roberts***, 2014 Mo. App. LEXIS 1299 at *17-20 (Mo. App. W.D. 2014), this Court expressly declined to follow *Randle*, noting that its limited reasoning did not address § 562.021.4 and ran afoul of the reasoning expressed by the Missouri Supreme Court in *Jackson*.

[10] Naturally, for language related to imperfect self-defense to be included in such an involuntary manslaughter instruction, there must be additional evidence in the record sufficient to support a finding of self-defense, as that is an affirmative defense upon which the defendant bears the burden of proof.

testimony that the victim was strangled, that strangulation was a cause of her death, or that strangulation occurred prior to her death.[11] It could instead simply focus upon the testimony and physical evidence related to the excessive nature of the blunt force injuries sustained by Hill. Moreover, the State wholly disregards Brown's testimony indicating that Hill's body was lifeless after Appellant finished kicking her and that she thought Hill was dead when she fled from the hotel room.[12] In short, the State's argument lacks merit.

The State next cites several cases pre-dating *Jackson* and *Pierce* for the proposition that the failure to give an additional lesser-included offense instruction is neither erroneous nor prejudicial when instructions for the greater offense and one lesser-included offense are given and the defendant is found guilty of the greater offense.[13] We seriously question whether those holdings have survived *Jackson* and *Pierce*, but assuming *arguendo* that they have, an exception applies "where the lesser offense that was actually submitted at trial did not 'test' the same element of the greater offense that the omitted lesser offense would have challenged." ***Briggs v. State***, 446 S.W.3d 714, 720 n.9 (Mo. App. W.D. 2014); *see also* ***State v. Nutt***, 432 S.W.3d 221, 224-25 (Mo. App. W.D. 2014); ***Frost***, 49 S.W.3d at 219-20.

---

[11] "All decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury, not to judges deciding what reasonable jurors must and must not do." ***Jackson***, 433 S.W.3d at 399. "The temptation to violate this principle and refuse to instruct down – though plainly wrong – can be almost overpowering in some cases, especially when the evidence is so strong and the inferences are so obvious that the giving of a lesser included offense instruction seems almost to beg for jury nullification or compromise verdicts." *Id*.

[12] Brown testified that Appellant kicked the victim in the left side of her head over ten times. She testified that after Appellant stopped kicking the victim, "She laid there. After she couldn't get up no more, she just laid there and she took one breath, and like a snorting sound, like (demonstrated), like she was – that was her last breath." Brown testified that she told "Peanut" that the victim was "fucked up in a room" by which she meant that Appellant had beaten the victim to death.

[13] *See, e.g.,* ***State v. Johnson***, 284 S.W.3d 561, 575 (Mo. banc 2009); ***State v. Glass***, 136 S.W.3d 496, 515 (Mo. banc 2004); ***State v. Johnston***, 957 S.W.2d 734, 751-52 (Mo. banc 1997).

The sole differentiating element between the second-degree murder instruction and the voluntary manslaughter instruction that were given to the jury was whether the defendant was under the influence of sudden passion arising from adequate cause when he knowingly or purposely caused Hill's death.[14] *See **Nutt***, 432 S.W.3d at 225; ***Frost***, 49 S.W.3d at 220. "By convicting on second-degree murder, and not voluntary manslaughter, the jury determined that [the defendant] did not cause [the victim's] death under the influence of sudden passion arising from adequate cause." ***Frost***, 49 S.W.3d at 220. The voluntary manslaughter instruction did not test whether the jury might have found that Appellant acted with a lesser mental state than knowingly or purposely, only whether or not sudden passion was involved. Under such circumstances, "[t]his court cannot say that the jury was adequately tested on the elements of second-degree murder to the extent that submission of involuntary manslaughter would have made no difference." ***Id***. at 221. Contrary to the State's argument, the submission of the voluntary manslaughter instruction and finding of guilt on the second-degree murder charge do not serve to rebut the presumption that Appellant was prejudiced by the trial court's failure to submit the requested involuntary manslaughter instruction to the jury.

For the foregoing reasons, Appellant's conviction and sentence are reversed, and the cause is remanded to the trial court for a new trial.

_____
Joseph M. Ellis, Judge

All concur.

---

[14] Indeed, as noted by the Missouri Supreme Court in ***State v. Redmond***, 937 S.W.2d 205, 208 (Mo. banc 1996) (quoting ***§ 565.023***), "the crime of voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused 'under the influence of sudden passion arising from adequate cause.'"